UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

In re:

Daphnee Doresca,

                       Debtor.

-------------------------------------------------------------------X

Daphnee Doresca,

                       Plaintiff,

       -against-

IndyMac Bank, FSB, OneWest Bank, FSB,
Ocwen Loan Servicing, LLC, et al.,

                       Defendants.

-------------------------------------------------------------------X

Ocwen Loan Servicing, LLC

             Third-Party Plaintiff,

       -against-

Daphnee Doresca, N City Corp. Builders, Inc.,
and "John Doe Nos. 1-10,"

             Third-Party Defendants.

-------------------------------------------------------------------X

Case No. 8-16-75006-las

Chapter 7

Adv. Pro. No. 8-17-08213-las

## MEMORANDUM DECISION AND ORDER ON DEFENDANTS'
## RULE 37 MOTION AND DEBTOR'S RENEWED CROSS-MOTION

      In this adversary proceeding, plaintiff and debtor Daphnee Doresca ("Debtor"), now

appearing *pro se*,[1] asks this Court to determine the validity, priority, or extent of a mortgage

lien asserted by defendants PHH Mortgage Corporation ("PHH"), successor by merger with

---

[1] Debtor was represented by counsel at the time this adversary proceeding was commenced. Debtor
terminated that engagement and proceeded *pro se*. Subsequently, at various stages of this adversary
proceeding, Debtor hired two other law firms to represent her. Each law firm requested, and was
granted leave, to withdraw as counsel.

Ocwen Loan Servicing, LLC ("Ocwen") and OneWest Bank, FSB ("One West" and, together with PHH, "Defendants") against the real property located at 199 William Street, Hempstead, New York (the "Property"). *See generally* First Amended Adversary Complaint ("First Amended Complaint").[2] [Dkt. No. 81.][3] In the First Amended Complaint, Debtor alleged that after she acquired the Property pursuant to a default judgment entered against the original borrower, Carla Desrouilleres, in the Supreme Court of the State of New York, County of Nassau, Ocwen assigned its mortgage to N City Corporate Builders, Inc. ("N City") and Debtor thereafter satisfied the mortgage debt by remitting payment to N City. Debtor further alleged that to the extent it is determined that Defendants hold a mortgage against the Property, Defendants are time-barred under the relevant statute of limitations from seeking to foreclose the mortgage.

For their part, Defendants have contested the validity of the alleged assignment and satisfaction of the mortgage and argue that the applicable statute of limitations has yet to expire. *See generally* Answer and Counterclaim. [Dkt. No. 99.] Debtor answered the counterclaim. [Dkt. No. 109.] Defendants also filed a third-party action against Debtor and N City seeking a determination as to the parties' respective rights in and to the Property and to expunge both the assignment of mortgage and the subsequent satisfaction of mortgage. The third-party action as against Debtor was dismissed solely on procedural grounds, and N City was joined as an additional party to Defendants' counterclaim. *See Memorandum*

---

[2] The First Amended Complaint is the operative complaint in this adversary proceeding. Debtor moved for leave to file a second amended complaint (the "Proposed Second Amended Complaint") [Dkt. Nos. 119, 124, 126], and Defendants opposed Debtor's motion to amend [Dkt. No. 125]. The Court denied Debtor's request in the *Memorandum Decision and Order* dated March 24, 2023 [Dkt. No. 196] (the "March 24 Order").

[3] Unless otherwise stated, all docket references to the adversary proceeding are cited as "[Dkt. No. ___]" and all docket references to the related bankruptcy case of the Debtor, Case No. 8-16-75006-las, are cited as "[Bankr. Dkt. No. ___]."

*Decision and Order on Motion to Dismiss Third-Party Complaint.* [Dkt. No. 211.] After joinder, Corporate Capital Brokers, LLC ("CCB"), successor-in-interest to N City[4], filed an answer to Defendants' counterclaim. [Dkt. No. 213.]

Now before the Court are two motions. The first is a motion [Dkt. No. 219] (the "Rule 37 Motion" or "Rule 37 Mot.") filed by Defendants, pursuant to Rule 37 of the Federal Rules of Civil Procedure[5], seeking case-terminating sanctions against both Debtor and CCB for failing to perform their obligations under the discovery rules and the discovery scheduling order entered by the Court. Specifically, Defendants request entry of an order: (1) striking and dismissing the complaint filed by Debtor; (2) striking the answer filed by CCB and granting a default judgment against CCB in PHH's favor; and (3) awarding attorneys' fees and costs incurred by Defendants in connection with the failure of Debtor and CCB to properly respond to Defendants' discovery requests and comply with Court-ordered discovery. The second, filed in response to the Rule 37 Motion, is Debtor's self-styled cross-motion [Dkt. No. 244] (the "Renewed Cross-Motion" or "Cross-Mot.")[6] seeking an order: (i) dismissing the counterclaims asserted against Debtor pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 9(b)[7]; (ii) cancelling and discharging the mortgage on the Property pursuant to N.Y. R.P.A.P.L. § 1501(4); (iii) relieving Debtor of the March 24 Order pursuant to Federal

---

[4] According to former counsel for N City, CCB is the successor in interest to N City. For ease of reference, the Court refers to the purported assignee of the mortgage as N City.

[5] Federal Rule of Civil Procedure 37 is made applicable to this adversary proceeding by Rule 7037 of the Federal Rules of Bankruptcy Procedure.

[6] On July 25, 2023, Debtor filed a similarly styled cross-motion [Dkt. No. 229] (the "July Cross-Motion"). The July Cross-Motion is not presently before the Court for the reasons discussed herein.

[7] Federal Rules of Civil Procedure 12(b) and 9(b) are made applicable to this adversary proceeding by Rules 7009 and 7012(b) of the Federal Rules of Bankruptcy Procedure.

Rule of Civil Procedure Rule 60(b)(1)-(5)[8]; and (iv) denying the Rule 37 Motion as moot, because the statute of limitations precludes the Court from adjudicating this matter.

Following careful review of the parties' submissions[9] and for the reasons stated below, the Court finds in favor of Defendants with respect to the Rule 37 Motion because Debtor and CCB failed to comply with Court-ordered discovery and the express provisions of the Federal Rules of Civil Procedure despite having been granted ample opportunity to do so. The Court,

---

[8] Federal Rule of Civil Procedure 60(b) is made applicable to this adversary proceeding by Rule 9024 of the Federal Rules of Bankruptcy Procedure.

[9] CCB did not file a response to the Rule 37 Motion. On July 25, 2023, counsel for CCB and non-party CN Capital Management Group LLC ("CN Capital") filed a motion to withdraw as counsel of record. [Dkt. No. 228; *see also* Dkt. No. 238.] The Court entered an order scheduling a hearing on the motion to withdraw for August 15, 2023, and directed counsel to effectuate service of the motion and accompanying materials in accordance with the procedures set forth therein. [Dkt. No. 240; *see also* 242.] The Court entered an order granting the motion to withdraw on August 18, 2023, [Dkt. No. 245] (the "Withdrawal Order"), and directed counsel to serve a copy of the Withdrawal Order on CCB and CN Capital by 5:00 p.m. that day. Withdrawal Order at 3-4. The Court also "remind[ed] the parties that neither CCB nor CN Capital can represent itself in this adversary proceeding" and directed that the parties retain counsel immediately if they wished to be heard. *Id.* at 2-3; *see also* Aug. 15 Hear'g Tr. at 24:11-13; 24:24-25:6. Additionally, the Withdrawal Order provided that CCB would have until September 8, 2023, to file and serve a response to the Rule 37 Motion. Withdrawal Order at 3. CCB did not file a response to the Rule 37 Motion. On September 19, 2023, CCB filed a letter with the Court, representing that former counsel did not serve them with the Withdrawal Order, of which they were purportedly unaware until September 18, 2023. [Dkt. No. 248.] The letter did not include a request for permission to file a late response to the Rule 37 Motion, and a notice of appearance has not been filed on the docket reflecting that CCB has retained new counsel. CCB has not retained counsel to date.

It is well-established that corporate entities may not proceed *pro se* in this circuit. *See, e.g., Jones v. Niagara Frontier Transp. Auth.*, 722 F.2d 20, 22 (2d Cir. 1983) (noting "it is established that a corporation, which is an artificial entity that can only act through agents, cannot proceed *pro se*"). As such, the Court will separately enter a notice of default against CCB pursuant to Rule 55(a). *See* Fed. R. Civ. P. 55(a); *Fed. Election Comm'n v. LatPAC*, No. 121CV06095ALCSDA, 2022 WL 72304 (S.D.N.Y. Jan. 7, 2022) (concluding that default should be entered against corporate defendant that failed to appear through counsel by deadline set by court); *Leviton Mfg. Co. v. Fastmac Performance Upgrades, Inc.*, No. 13 CIV. 01629 (LGS), 2013 WL 12334706 (S.D.N.Y. Aug. 20, 2013) ("The Second Circuit has held that a defendant partnership's failure to comply with a court's order that the defendant obtain counsel constitutes failure to 'otherwise defend' for the purpose of Rule 55(a) such that an entry of default is justified."). The entry of default against CCB constitutes a judicial recognition that CCB admits all well-pleaded allegations against it. *See generally McFarlane v. Harry's Nurses Registry*, No. 17CV06350PKCPK, 2020 WL 1643781 (E.D.N.Y. Apr. 2, 2020) ("The entry of default 'formalizes a judicial recognition that a defendant has, through its failure to defend the action, admitted liability to the plaintiff.'") (internal citation omitted); *Vt. Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004) (noting that default judgments "track[ ] the ancient common law axiom that a default is an admission of all well-pleaded allegations against the defaulting party").

however, declines to enter case-terminating sanctions and denies Defendants' request to (i) strike and dismiss the First Amended Complaint for Debtor's failure to comply with Court-ordered discovery, and (ii) strike CCB's answer and award default judgment against CCB for its failure to comply with Court-ordered discovery. The Court also denies Debtor's Renewed Cross-Motion insofar as it relates to the discovery dispute.[10]

Although the Court denies Defendants' request to impose case-terminating sanctions, the Court nevertheless concludes that sanctions shall be imposed on Debtor and CCB barring the introduction of evidence, but not the assertion of any claim or defense, under Rule 37(b)(2)(A)(ii) for their failure to obey Court-ordered discovery. Debtor and CCB are precluded from offering responsive documents in evidence at a hearing or trial that were not timely and properly produced in discovery. As explained below, because of their utter disregard of the Federal Rules of Civil Procedure and their failure to comply with Court-ordered discovery, Debtor and CCB have forfeited their right to introduce at a hearing or trial any documents that should have been produced, but were not produced, in response to the PHH Requests (as defined herein). Furthermore, Debtor and CCB have forfeited their right to testify as to the contents of, or otherwise rely on, any such documents that were not timely and properly produced.

Additionally, pursuant to Rule 37(b)(2)(C), Debtor and CCB shall pay the reasonable expenses, including attorney's fees, incurred by Defendants because of their non-compliance with the Court's discovery order. The Court therefore grants Defendants' request for

---

[10] The Court will separately address Debtor's remaining requests for relief, as enumerated in the Renewed Cross-Motion, in a subsequent decision as such requests do not seek relief similar to that sought in the Rule 37 Motion. *See* Black's Law Dictionary (11th ed. 2019) ("Motion" and "Cross-Motion") (defining "cross-motion" as "[a] competing request for relief or orders similar to that requested by another party against the cross-moving party, such as a motion for summary judgment or for sanctions"); *see also generally Erickson v. MGM Grand, Inc., No. 13 CIV. 564 (NRB)*, 2014 WL 12774971, at *4 (S.D.N.Y. June 25, 2014) (citing Black's Law Dictionary, "Cross-Motion"); *Lent v. Fashion Mall Partners, L.P.*, 243 F.R.D. 97, 99–100 (S.D.N.Y. 2007) (same).

reasonable attorneys' fees and costs for prosecution of the Rule 37 Motion, the specific amount of which shall be determined after submission of supplemental documents. Accordingly, by May 3, 2024, Defendants shall file and serve an affidavit and supporting papers detailing such fees and costs incurred because of Debtor's and CCB's noncompliance with their discovery obligations and the Order of the Court dated April 17, 2023. Opposing papers, if any, shall be filed and served by May 17, 2024.

## JURISDICTION

The Court has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b) and the Standing Order of Reference of the United States District Court for the Eastern District of New York, dated August 28, 1986 (Weinstein, C.J.), as amended by Order dated December 5, 2012 (Amon, C.J.) entered in accordance with 28 U.S.C. § 157(a).

## BACKGROUND[11]

### I. The Discovery Dispute

#### A. PHH Requests Served on CCB and the CCB Responses

After the Court granted Debtor leave to file the First Amended Complaint, the Court entered a discovery scheduling order on December 2, 2021 (the "December 2 Scheduling Order"). [Dkt. No. 112]; *see also* Rule 37 Mot. at 3. The December 2 Scheduling Order set March 1, 2022 as the discovery completion date and scheduled a post-discovery conference for March 22, 2022. [Dkt. No. 112.]

On or about December 17, 2021, PHH served its First Set of Interrogatories and First Request for Production of Documents upon CCB (the "CCB Requests"). Rule 37 Mot. at 3.

---

[11] The parties' familiarity with the facts and procedural history is presumed as set forth in prior decisions of the Court. *See Memorandum Decision and Order*, dated March 24, 2023 [Dkt. No. 196]; *Memorandum Decision and Order on Motion to Dismiss Third-Party Complaint*, dated May 16, 2023 [Dkt. No. 211]. The Court recounts only those facts and procedural history that are pertinent to the disposition of the pending motions.

CCB timely responded (the "CCB Responses") to the CCB Requests. *Id.* at 4. The CCB Responses consisted of a single Word document titled "Response to First Set of Interrogatories," but failed to properly respond to the First Request for Production of Documents and annexed three documents – 1) a purported CIT Incumbency Certificate, 2) a purported Affidavit of CIT Bank, and 3) a purported Third Amended and Restated Custodial and Disbursement Agreement and Ex. D – Affidavit of Samuel Osuji. *Id.*

On January 25, 2022, PHH sent counsel to CCB a letter outlining the deficiencies in the CCB Responses and requesting a meet and confer (the "CCB Deficiency Letter"). *Id.* at 14; Roberts Decl. ¶ 7. In the CCB Deficiency Letter, PHH noted that the CCB Responses fail to comply with Rules 26(g)(1), 34(b)(2)(B), and 33(b)(3) and contain "identical, boilerplate objections." *See* Roberts Decl., Ex. 4.

On March 2, 2022, the parties met and conferred, and CCB's counsel advised that CCB would produce additional documents responsive to the CCB Requests and address the deficiencies outlined in the CCB Deficiency Letter. Rule 37 Mot. at 4. CCB advised it would produce additional documents by April 21, 2022. *Id.* CCB failed to address the deficiencies. *Id.*

## B. PHH Requests Served on Debtor and Debtor Responses

On or about January 7, 2022, PHH served its First Set of Interrogatories and First Request for Production of Documents upon Debtor (the "Debtor Requests," and, together with the CCB Requests, the "PHH Requests"). *Id.* at 10; Roberts Decl. ¶ 4. Debtor's deadline to respond was February 7, 2022. Rule 37 Mot. at 4; Roberts Decl. ¶ 9. Debtor failed to respond to the Debtor Requests until February 18, 2022 (the "Debtor Responses"). Rule 37 Mot. at 4; Roberts Decl. ¶ 9. Defendants claim that Debtor's production failed to properly respond to the First Request for Production of Documents and consisted of a single document – a publicly-available Order in *Daphne Doresca v. Carla Desrouilleres*, in Supreme Court,

Nassau County Index No. 001305/09. Rule 37 Mot. at 4-5; Roberts Decl. ¶ 10. Further, Defendants argue that Debtor's response to the First Set of Interrogatories consisted mostly of boilerplate objections and, to the extent Debtor answered the Interrogatories, the answers were non-responsive. Rule 37 Mot. at 4-5; Roberts Decl. ¶ 10.

On March 8, 2022, PHH sent a letter to Debtor outlining the deficiencies in the Debtor Responses and requesting a meet-and-confer (the "Debtor Deficiency Letter" and, together with the CCB Deficiency Letter, the "Deficiency Letters"). Rule 37 Mot. at 5. In the Debtor Deficiency Letter, PHH noted that the Debtor Responses failed to comply with Rule 34(b)(2), "which requires a separate response to each item of category of documents sought by PHH[,]" and failed to comply with Rule 33(b)(3), "which states that '[e]ach interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath." *See* Roberts Decl., Ex. 8. The Debtor Deficiency Letter also noted that Debtor's production "consists of only one document," and "the majority of [Debtor's] responses to the Interrogatories contain identical, boilerplate objections and thus, fail to comply with Rule 33(b)(4)[]." *Id.*

Defendants maintain that attempts to schedule a meet-and-confer with Debtor regarding the Debtor Deficiency Letter were unsuccessful, and that Debtor did not contact counsel for PHH regarding the letter. Rule 37 Mot. at 5.

### C. PHH's Motion to Compel, Debtor's Cross-Motion, CCB's Cross-Motion, and the April 13 Hearing

On April 26, 2022, PHH filed a letter requesting that the Court schedule a telephonic conference to resolve the parties' discovery disputes, and if the parties were unable to resolve the outstanding discovery issues, the Court allow PHH to file a motion to compel ("April 26 Letter"). [Dkt. No. 132]; Rule 37 Mot. at 5.

On April 27, 2022, the Court entered an order scheduling a telephonic discovery conference for May 4, 2022 (the "May 4 Teleconference"). [Dkt. No. 133]; *see also* Rule 37 Mot. at 5. The Court also directed that any response to the April 26 Letter shall be filed and served upon PHH's counsel by no later than 12:00 p.m. on May 3, 2022. [*Id.*]; *see also* Rule 37 Mot. at 5. Debtor was the only party to file a response to the April 26 Letter. [Dkt. No. 136]; *see also* Rule 37 Mot. at 6.

At the May 4 Teleconference, the discovery dispute was not resolved by the parties, and the Court granted PHH's request to file a motion to compel and set a briefing schedule. Rule 37 Mot. at 6. On May 17, 2022, PHH filed a Motion to Compel, seeking an order, pursuant to Rule 37 and Local Bankruptcy Rule 7007-1(b), to compel compliant responses to the PHH Requests ("Motion to Compel"). [Dkt. No. 137]; *see also* Rule 37 Mot. at 6. On June 1, 2022, Debtor filed opposition to the Motion to Compel and a Cross-Motion to Compel Discovery ("Debtor's Cross-Motion"). [Dkt. Nos. 139-41]; *see also* Rule 37 Mot. at 6. On June 2, 2022, CCB filed opposition to the Motion to Compel and a Cross-Motion to Compel Discovery ("CCB's Cross-Motion"). [Dkt. No. 142]; *see also* Rule 37 Mot. at 6. On June 8, 2022, PHH filed its reply in support of its Motion to Compel and in opposition to Debtor's Cross-Motion and CCB's Cross-Motion. [Dkt. Nos. 143-45]; *see also* Rule 37 Mot. at 6.

An in-person hearing was held on April 13, 2023.[12] Rule 37 Mot. at 6. At the hearing, the Court directed the parties to respond to outstanding discovery set forth in the Motion to Compel, Debtor's Cross-Motion, and CCB's Cross-Motion by May 12, 2023. *Id.* The Court entered a written scheduling order on April 17, 2023 (the "April 17 Order" or "Apr. 17 Order"). [Dkt. No. 205.] Pursuant to the April 17 Order, Debtor and CCB were directed to serve

---

[12] Debtor represented to the Court that she was out of the country from November 17, 2022, to January 16, 2023. [Dkt. No. 178.]

responses to the Debtor Requests and CCB Requests no later than May 12, 2023. Apr. 7 Order at 2. PHH was also directed to respond to Debtor's discovery requests by the same day. *Id.* [I The Court marked off PHH's Motion to Compel and Debtor's Cross-Motion to Compel.[13] *Id.*

Neither Debtor nor CCB responded to the Debtor Requests or CCB Requests by the May 12, 2023 deadline. Rule 37 Mot. at 7; Roberts Decl. ¶ 22.

### D. PHH's Rule 37 Motion for Sanctions and Debtor's Self-Styled Cross-Motions

A status conference was held on May 25, 2023 (the "May 25 Hearing"). Rule 37 Mot. at 7. PHH advised the Court that neither CCB nor Debtor responded to its discovery demands[14] and requested leave to file this Rule 37 Motion to strike the pleadings and for sanctions. *Id.*; *see also* May 25 Hear'g Tr. at 5:7-10. The Court granted PHH's request, and by order dated May 31, 2023, the Court confirmed that, subject to a ruling on Defendants' Motion to Compel compliant responses to a Rule 45[15] subpoena served on non-party CN Capital [Dkt. No. 157][16], discovery was closed and directed Defendants to file the Rule 37 Motion no later than June 26, 2023. [Dkt. No. 217]; *see also* Rule 37 Motion at 7.

On June 23, 2023, Defendants filed the Rule 37 Motion seeking entry of an order: (1) striking and dismissing Debtor's complaint; (2) striking CCB's answer and awarding default judgment against CCB in PHH's favor; and (3) awarding attorneys' fees and costs incurred

---

[13] At the April 13 Hearing, the Court noted that the demands referenced in CCB's Cross-Motion were never served and directed the parties to meet-and-confer and file a joint letter. *See* Apr. 13 Hear'g Tr. at 57:24-58:25. Two joint letters were filed regarding the parties' proposed resolution. [Dkt. Nos. 207, 210.]

[14] At the May 25 Hearing, former counsel for PHH noted that responses to the Debtor's request for admission, interrogatories, and request for production were served by the May 12 deadline in accordance with the April 17 Order. *See* May 25 Hear'g Tr. at 5:4-7.

[15] Federal Rule of Civil Procedure 45 is made applicable to this adversary proceeding by Rule 9016 of the Federal Rules of Bankruptcy Procedure.

[16] The Court's ruling on the motion to compel responses to the Rule 45 subpoena served on CN Capital will be addressed in a separate decision.

by Defendants in connection with the failure of Debtor and CCB to respond to Defendants' discovery requests, together with such other and further relief as the Court deems just and proper.

On July 25, 2023, Debtor filed the July Cross-Motion seeking an order: (1) dismissing the causes of action asserted against her in the Third-Party Complaint pursuant to Rules 12(b)(1), 12(b)(6) and 9(b);[17] (2) cancelling and discharging of record the mortgage asserted by Defendants on the Property pursuant to N.Y. R.P.A.P.L § 1501(4); (3) determining that Debtor is a *bona fide* purchaser for value pursuant to N.Y. R.P.L. § 266;[18] (4) imposing sanctions against Andrea Roberts, Esq., Blank Rome LLP, and PHH for a violation of the automatic stay pursuant to § 362(a)(4),(5), § 362(k)(1) and § 105, and expunging the alleged post-petition lien created in favor of PHH on September 24, 2019 and filed on October 27, 2019 by Blank Rome, IndyMac Bank, F.S.B., OneWest, Ocwen, and PHH encumbering the Property; (5) relieving Debtor of the March 24 Order pursuant to Rule 60(a); (6) for sanctions striking PHH's answer to Debtor's First Amended Complaint pursuant to Rule 37; (7) for sanctions expunging post-petition mortgage lien; and (8) awarding such other relief as the Court deems proper. [Dkt. No. 229.] Debtor also opposed the Rule 37 Motion. [*Id.*] Defendants filed their reply in support of the Rule 37 Motion and in opposition to the July Cross-Motion on July 28, 2023. [Dkt. No. 232.] On July 31, 2023, Debtor filed a memorandum of law in support of the July Cross-Motion, along with an accompanying declaration, wherein Debtor

---

[17] As noted earlier, the Third-Party Complaint was dismissed as against Debtor solely on procedural grounds two months before she filed the July Cross-Motion, *see Memorandum Decision and Order on Motion to Dismiss Third-Party Complaint*, dated May 16, 2023. [Dkt. No. 211.] A counterclaim has been asserted against Debtor in the main adversary proceeding [Dkt. No. 99] and Debtor answered the counterclaim [Dkt. No. 109].

[18] Four months before filing the July Cross-Motion, the Court denied Debtor's motion for leave to file the Proposed Second Amended Complaint to add a claim that she is a *bona fide* purchaser for value. *See Memorandum Decision and Order*, dated March 24, 2023 [Dkt. No. 196].

represents she served a supplemental response to the Debtor Requests that same day. [Dkt. Nos. 235, 236.]

At a hearing held on August 1, 2023, the Court advised Debtor that the July Cross-Motion was improper because the relief requested could not be brought as a cross-motion. *See* Aug. 1 Hear'g Tr. at 11:25-12:23; *id.* at 20:3-15. On August 16, 2023, Debtor filed the Renewed Cross-Motion. [Dkt. No. 244.] On September 13, 2023, Defendants timely filed their declaration in opposition to the Renewed Cross-Motion. [Dkt. No. 246.] Debtor filed an untimely declaration and memorandum of law in further support of the Renewed Cross-Motion on September 19, 2023. [Dkt. Nos. 247, 249.]

On November 17, 2023, counsel[19] for Defendants filed a supplemental memorandum of law in support of the Rule 37 Motion and in opposition to the Renewed Cross-Motion [Dkt. No. 273] ("Supp. Cross-Mot. Opp."), along with accompanying Victor Declaration ("Victor Decl.") [Dkt. No. 272] and Schulte Declaration ("Schulte Decl.") [Dkt. No. 275]. On December 22, 2023, Debtor filed a supplemental brief in response thereto, along with accompanying materials. [Dkt. Nos. 280-82].

## LEGAL STANDARD

The Second Circuit has recognized that all litigants, including *pro se* litigants, have an obligation to comply with court orders, and the failure to do so may result in sanctions. *See Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302 (2d Cir. 2009); *see also Pergament v. Thilman (In re Thilman)*, 548 B.R. 1, 7 (Bankr. E.D.N.Y. 2016) ("[W]hile *pro se* litigants may in general deserve more lenient treatment than those represented by counsel, all litigants, including *pro ses*, have an obligation to comply with court orders. When they flout

---

[19] Defendants' counsel, Blank Rome LLP, moved to withdraw as counsel of record [Dkt. Nos. 261, 262.] That motion was granted by Order dated December 1, 2023. [Dkt. No. 278.] Previously, on October 16, 2023, Defendants' new counsel, Houser LLP, filed a notice of appearance. [Dkt. No. 251.] Houser LLP is now counsel of record for Defendants in the adversary proceeding.

that obligation, they, like all litigants, must suffer the consequences of their actions.") (citing *McDonald v. Head Criminal Court Supervisor Officer*, 850 F.2d 121, 124 (2d Cir. 1988)); *McDonald v. Head Crim. Ct. Supervisor Officer*, 117 F.R.D. 55, 58 (S.D.N.Y. 1987), *aff'd*, 850 F.2d 121 (2d Cir. 1988) (observing that "special solicitude for the difficulties that a *pro se* plaintiff must face does not extend to the wil[l]ful, obstinate refusal to play by the basic rules of the system upon whose very power the plaintiff is calling to vindicate his rights").

Rule 37(b) of the Federal Rules of Civil Procedure allows a court to impose sanctions against a party who "fails to obey an order to provide or permit discovery under Rule 26(f), 35, or 37(a)." *See Thilman*, 548 B.R. at 7 (citing Fed. R. Civ. P. 37(b)(2)(A)). Given that "compliance with discovery orders . . . is necessary to the integrity of our judicial process . . . part[ies] who flout[] such orders do so at [their] peril." *Id.* at 8. Discovery sanctions are generally imposed for three purposes: "(1) to ensure that a party will not benefit from its failure to comply; (2) to obtain compliance with the Court's orders; and (3) to deter noncompliance, both in the particular case and in litigation in general." *See Karsch v. Blink Health Ltd.*, No. 17CV3880VMBCM, 2019 WL 2708125, at *12 (S.D.N.Y. June 20, 2019). "Consistent with these purposes, any sanction imposed under Rule 37(b) must be 'just,' and its severity 'must be commensurate with the non-compliance.'" *See In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 673 F. Supp. 3d 345, 354 (S.D.N.Y. 2023) (citing *Karsch*, 2019 WL 2708125, at *12).

Rule 37(b)(2) authorizes a court to issue "further just orders[,]" which may include the following:

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
>
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
>
> (iii) striking pleadings in whole or in part;

(iv) staying further proceedings until the order is obeyed;

(v) dismissing the action or proceeding in whole or in part;

(vi) rendering a default judgment against the disobedient party; or

(vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A)(i)-(vii). The list of possible sanctions included in Rule 37(b)(2) is not exhaustive. *See In re Charles DeGennaro, III*, No. 20 CIV. 7958 (CM), 2020 WL 7231945, at *7 (S.D.N.Y. Dec. 8, 2020) (citing *Miltope Corp. v. Hartford Cas. Ins. Co.*, 163 F.R.D. 191, 194 (S.D.N.Y. 1995)).

Courts have wide discretion to impose sanctions under Rule 37(b). *See E.L.A. v. Abbott House, Inc.*, No. 16CV1688RMBJLC, 2020 WL 5682019, at *1 (S.D.N.Y. Sept. 24, 2020); *Thilman*, 548 B.R. at 7 (noting that courts have "broad discretion in fashioning an appropriate sanction" under Rule 37) (quoting *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 101 (2d Cir. 2002)). In deciding which, if any, sanctions are appropriate, courts consider several factors, including:

(1) the willfulness of the non-compliant party or the reason for noncompliance;

(2) the efficacy of lesser sanctions;

(3) the duration of the period of noncompliance; and

(4) whether the non-compliant party had been warned of the consequences of noncompliance.

*See Agiwal*, 555 F.3d at 302-03 (same); *Thilman*, 548 B.R. at 7 (same). None of these factors is exclusive or dispositive. *See E.L.A.*, 2020 WL 5682019, at *1. "The Court may consider 'the full record in the case in order to select the appropriate sanction.'" *See In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 673 F. Supp. 3d at 354 (internal citation omitted).

Rule 37(b)(2)(C) further provides that, "instead of or in addition to imposing sanctions for a party's failure to comply with a court order, 'the court must order the disobedient party,

the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.'" *See Patino v. Avalon Bay Communities, Inc.*, No. CV142376LDWAYS, 2016 WL 8677284, at *3 (E.D.N.Y. Jan. 8, 2016) (quoting Fed. R. Civ. P. 37(b)(2)(C)). While the Second Circuit has not explicitly held that the payment of expenses pursuant to Rule 37(b)(2)(C) is mandatory[20], the burden is on the violator of a discovery order to show that there was a substantial justification for the violation, or that circumstances would make an award of reasonable expenses unjust. *Id.*

"In determining the amount of reasonable attorneys' fees, '[t]he most useful starting point . . . is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'" *See Karsch*, 2019 WL 6998563, at *2 (quoting *S.E.C. v. Yorkville Advisors, LLC,* 2015 WL 855796, at *10 (S.D.N.Y. Feb. 27, 2015)). As to the hourly rates, "[a] fee applicant bears the burden of 'produc[ing] satisfactory evidence' that its requested rates are 'in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.'" *See id.* (quoting *In re Terrorist Attacks on Sept. 11, 2001*, 2015 WL 6666703, at *4 (S.D.N.Y. Oct. 28, 2015)). As to the number of hours expended, "[h]ours that are "excessive, redundant, or otherwise unnecessary" may

---

[20] Several courts in this circuit have held that cost-shifting under Rule 37(b)(2)(C) is mandatory. *See, e.g., E.L.A.*, 2020 WL 5682019, at *5 (observing that "the Court must grant these sanctions unless Plaintiff's counsel establishes that his 'failure was substantially justified or other circumstances make an award of expenses unjust') (citing *Silva v. Cofresi*, No. 13-CV-3200 (CM) (JCF), 2014 WL 3809095, at *5 (S.D.N.Y. Aug. 1, 2014)); *Kizer v. Abercrombie & Fitch Co.*, No. CV125387JSAKT, 2017 WL 9512408, at *6 (E.D.N.Y. July 24, 2017), *report and recommendation adopted*, No. 12CV5387JSAKT, 2017 WL 3411952 (E.D.N.Y. Aug. 9, 2017) ("Rule 37(b)(2)(C) *requires* that 'instead of or in addition to' other sanctions imposed, the disobedient party or his designated counsel '*must*' pay 'reasonable expenses' to include attorney's fees caused by the failure."); *Joza v. WW JFK LLC*, No. 07-CV-4153(ENV)(JO), 2009 WL 10706518, at *3 (E.D.N.Y. June 25, 2009) ("Indeed, where a party fails to follow a discovery order, Rule 37(b)(2)(C) mandates that a court impose reasonable costs on the disobedient party.").

be excluded from an attorneys' fee award. *See id.* at *4 (quoting *Infinity Headwear & Apparel v. Jay Franco & Sons*, 2016 WL 6962541, at *5 (S.D.N.Y. Nov. 28, 2016)).

## ANALYSIS

### I.    DEBTOR'S STATUTE-OF-LIMITATIONS ARGUMENT HAS NO BEARING ON RESOLUTION OF THE RULE 37 MOTION.

Before evaluating the merits of the Rule 37 Motion, the Court first addresses an issue raised by Debtor in the Renewed Cross-Motion. Debtor argues that the Rule 37 Motion should be denied because the "statute of limitation[s] limits the jurisdiction [of] this Court to adjudicate this matter." *See* Cross-Mot. ¶ 138. As discussed *supra* note 10, the Court will address the Renewed Cross-Motion in a separate forthcoming decision. However, because Debtor endeavored to frame her statute-of-limitations argument as somehow dispositive of the Rule 37 Motion, the Court will address the argument to the extent necessary here.

### A.    Debtor's Argument Is Improperly Raised in the Renewed Cross-Motion.

Debtor's statute-of-limitations argument is not properly raised in Debtor's cross-motion. Black's Law Dictionary defines a cross motion as "[a] *competing* request for relief or orders *similar to that requested by another party against the cross-moving party*, such as a motion for summary judgment or for sanctions." *See* CROSS-MOTION, Black's Law Dictionary (11th ed. 2019) (emphasis added); *see also generally Erickson v. MGM Grand, Inc.*, No. 13 CIV. 564 (NRB), 2014 WL 12774971, at *4 (S.D.N.Y. June 25, 2014) (citing Black's Law Dictionary, "Cross-Motion"); *Lent v. Fashion Mall Partners, L.P.*, 243 F.R.D. 97, 99–100 (S.D.N.Y. 2007) (same). Debtor filed the Renewed Cross-Motion in response to Defendants' Rule 37 Motion, which pertains solely to discovery issues related to the PHH Requests and seeks discovery sanctions in connection therewith. In the Renewed Cross-Motion, Debtor seeks dispositive relief of the issues raised *in this adversary proceeding* by way of her statute-of-limitations argument. Debtor's requested relief in the Renewed Cross-Motion is in no way

"similar" to the relief requested by Defendants in the Rule 37 Motion and is therefore improperly raised as part of the cross-motion.[21]

Indeed, contrary to Debtor's representations, resolution of this issue has no bearing on resolution of the Rule 37 Motion. Courts have made clear that parties may not hide behind their positions that claims are time-barred as a means of circumventing discovery orders. *See, e.g.*, *Teri v. Oxford Mgmt. Servs., Inc.*, No. CV052777DRHWDW, 2008 WL 11435689, at *6-8 (E.D.N.Y. Sept. 30, 2008) (J. Wall) (concluding that defendants' position that plaintiffs are time-barred "does not excuse their failure to comply with direct orders of the court" and imposing sanctions for "grossly negligent" conduct throughout discovery pursuant to Rule 37(b)); *Teri v. Oxford Mgmt. Servs., Inc.*, No. 05CV2777DRHWDW, 2009 WL 10706061, at *1 (E.D.N.Y. Nov. 18, 2009) (J. Hurley) (adopting report and recommendation and striking answer under Rule 37).

### B. It Is Not Clear that the Claim at Issue Is Untimely from the Face of Debtor's Complaint.

---

[21] At a hearing held on August 1, 2023, the Court brought a similar issue to Debtor's attention in connection with the July Cross-Motion:

> The cross motion is not a pleading under Federal Rules of Civil Procedure 7. So what is a cross motion? A cross motion requests relief similar to that requested by the original moving party. So the only item to consider in the pleading that Ms. Doresca has labeled as a cross motion is her request for sanctions against the defendants for her allegation that they failed to comply with the discovery scheduling order entered by the Court in April of 2023. The balance of the relief requested in that cross motion must properly be brought before the Court via a separate motion. . . .

> There's a variety of matters on the calendar. . . . I think the thought process from my standpoint is that . . . Ms. Doresca's most recent filing which she labeled as a cross motion, in other words, all that relief, that has nothing to do with a sanctions issue under 37(b) with respect to discovery, all of that is better dealt with in person in this courtroom. And so my inclination and directive is that the matters be adjourned and I will give the parties an adjourn date. It will be after August 23rd. Ms. Doresca will be here in person in the courtroom as well as you, Ms. Roberts.

*See* Aug. 1 Hear'g Tr. at 12:8-23, 20:3-15.

It is well-established that a court "may only dismiss an action based on the statute of limitations if, on the face of the complaint, it is clear the claim is untimely." *See In re Gilad*, No. 1-20-43233-JMM, 2023 WL 5740203, at *5 (Bankr. E.D.N.Y. Sept. 3, 2023) (citing *Atl. Int'l Movers, LLC v. Ocean World Lines, Inc.*, 914 F. Supp. 2d 267, 279 (E.D.N.Y. 2012) (internal quotations omitted). This not the case here for the reasons discussed below.

In the Renewed Cross-Motion, Debtor cites CPLR § 213(4), which provides that "an action upon a bond or note, the payment of which is secured by a mortgage upon real property, or upon a bond or note and mortgage so secured, or upon a mortgage of real property, or any interest therein" must be commenced within six years. *See id.* ¶ 86; CPLR § 213(4). Debtor argues that "[a] cause of action to recover the entire balance of the debt accrues at the time the loan is accelerated, triggering the six-year statute of limitations to commence a foreclosure action." *See* Cross-Mot. ¶ 86.

Debtor now alleges that IndyMac Bank sent the original borrower, Carla Desrouilleres, the following: 1) a notice of default, titled "ACCELERATION WARNING (NOTICE OF INTENT TO FORECLOSE)," on November 1, 2008 (the "November 1 Notice"), and 2) a letter titled "Acceleration of Mortgage" on December 4, 2008 (the "December 4 Notice"). *See id.* ¶¶ 74-75; *see also* Cross-Mot. Ex. E, F. Citing and relying upon the December 4 Notice, Debtor maintains that "[i]t is undisputed that the six (6) year statute of limitation in this case was triggered by the acceleration of mortgage dated December 4, 2008." *See* Cross-Mot. ¶ 87. It is now Debtor's position that the six-year statutory period began to run on December 4, 2008, and terminated on December 4, 2014, prior to the filing of Debtor's first bankruptcy petition on February 9, 2015. *Id.* ¶ 88.

Debtor's current position in the Renewed Cross-Motion and subsequent filings is a departure from the factual allegations in her pleadings. Critically, Debtor has never before

referenced the December 4 Notice. In Debtor's original complaint, Debtor expressly alleges that the statute of limitations "began to run on November 12, 2009"—the date the foreclosure action was commenced—and expired on November 11, 2015. [*See* Dkt. No. 1 ¶¶ 45-54.] Debtor then sought to amend the complaint, alleging that "[t]here is an error as to the time the clock began to run" and that "[i]n error prior counsel stated it began to run Nov[.] 12[,] 2009." [*See* Dkt. No. 66.] Debtor filed the operative First Amended Complaint, which contains notable inconsistencies. On the one hand, Debtor alleges that "the statute of limitations began to run on November 1, 2008, when the underlying mortgage debt was accelerated" and expired on November 1, 2014. [*See* Dkt. No. 81 ¶¶ 47-56.] On the other hand, Debtor also includes allegations that the statute of limitations "began to run on November 2009"—without providing a particular day. [*See* Dkt. No. 81 ¶ 29.] There is and can be no dispute that neither the original complaint nor the First Amended Complaint[22] contain any allegations concerning the December 4 Notice.

In response, Defendants contend that they have consistently disputed—and continue to dispute—Debtor's argument that the applicable statute of limitations has expired, let alone on December 4, 2014. Supp. Cross-Mot. Opp. at 7. First, Defendants challenge the authenticity of the November 1 Notice and the December 4 Notice. Defendants maintain that, according to the servicing records ("Servicing Records") of First-Citizens Bank & Trust Company ("First Citizens"), no such documents ever existed. *Id.* at 5-6. Defendants maintain that no letters or notices were prepared or sent on November 1, 2008, or December 4, 2008. *Id.* at 6. Rather, according to Defendants, the Servicing Records demonstrate that a default notice was sent on December 16, 2008 (the "December 16 Notice"). *Id.* Defendants steadfastly

---

[22] The Court notes that Debtor's Proposed Second Amended Complaint (*see supra* note 2) likewise makes no reference to the December 4 Notice.

　
maintain that the December 16 Notice "was the only default letter sent to the Borrower in 2008." *Id.* (quoting Schulte Decl. ¶¶ 11-12). Defendants further assert that the December 16 Notice did not accelerate the mortgage debt and thus the statute of limitations was not triggered by the December 16 Notice. *Id.* (collecting cases)

Second, Defendants argue that Debtor's multiple bankruptcy cases[23] tolled the statute of limitations. *Id.* at 9-11. Defendants highlight that the commencement of a bankruptcy case automatically stays "any act to . . . enforce any lien against property of the estate." *Id.* at 9 (citing 11 U.S.C. §362(a)(4)). Additionally, Defendants cite authority in support of their position that the automatic stay tolls the limitations period for foreclosure actions. *Id.* (citing cases); *see also Bank of New York Mellon v. Hatter*, No. 14CV1024JMAAYS, 2017 WL 11724909, at *2 (E.D.N.Y. Dec. 21, 2017) (wherein defendants acknowledged that statute of limitations under CPLR § 213 was tolled pursuant to the automatic stay during the pendency of bankruptcy cases).

Defendants then offer their calculations based on "Debtor's own allegations" in the complaint—i.e., assuming that the statute of limitations began to run on November 12, 2009. Supp. Cross-Mot. Opp. at 10. Defendants conclude that the statute of limitations did not expire on November 12, 2015 because it was tolled during Debtor's bankruptcy cases. *Id.* Defendants point out that Debtor was in bankruptcy from: (i) February 9, 2015 to July 13, 2015; (ii) September 29, 2015 to May 18, 2016; and (ii) October 15, 2016, to the present. *Id.* According to Defendants, as of the Debtor's first bankruptcy petition filed on February 9,

---

[23] As discussed below, on October 25, 2016, Debtor filed a voluntary petition for relief commencing her current case under chapter 13 of the Bankruptcy Code. [Bankr. Dkt. No. 1.] On request of Debtor, the chapter 13 case was converted to a chapter 7 case on January 6, 2017. [Bankr. Dkt. No. 24.] This is Debtor's third bankruptcy filing, having previously filed a chapter 7 petition on February 9, 2015, in which Debtor received a discharge [Dkt. No. 29, Case No. 8-15-70486-las], and a chapter 13 petition on September 29, 2015, which was subsequently dismissed on motion of the chapter 13 trustee [Dkt. No. 31, Case No. 8-15-74157-las]. Because Debtor received a discharge in her prior chapter 7 case, Debtor is ineligible to receive a discharge in her now-converted chapter 7 case. *See* 11 U.S.C. §727(a)(8).

2015, there were 276 days remaining in the limitations period. *Id.* Defendants calculate that the statute of limitations period has been tolled for all but 232 days over the course of the 3,201 days since Debtor's first bankruptcy petition, and 44 days remain in the limitations period, which will not begin to run until the automatic stay imposed by the Debtor's current bankruptcy case is lifted or terminated. *Id.*

The Court reserves its ruling on the statute-of-limitations issue—including the question of the authenticity of the November 1 and December 4 Notices raised by Defendants—until the parties have presented arguments and evidence in connection therewith at trial. However, given the blatant inconsistencies and omissions in Debtor's pleadings, the Court is compelled to note at this juncture that it simply cannot conclude that the operative complaint is "clear on its face" that the statute of limitations expired. *See In re Gilad*, 2023 WL 5740203, at *5.

## II.    DISCOVERY SANCTIONS PURSUANT TO RULE 37(b)(2)(A) ARE APPROPRIATE.

The Court now addresses the four *Agiwal* factors.  For the reasons set forth below, the Court concludes that sanctions are appropriate pursuant to Rule 37(b). However, in light of the guidance in this Circuit that "a court should always seek to impose the least harsh sanction that will remedy the discovery violation and deter such conduct in the future[,]" the Court declines to strike and dismiss Debtor's complaint, and to strike CCB's answer and award a default judgment against CCB. *See generally Thilman*, 548 B.R. at 10 (quoting *Silva v. Cofresi*, No. 13 Civ. 3200(CM)(JCF), 2014 WL 3809095, at *3 (S.D.N.Y. Aug. 1, 2014)). However, the Court exercises its discretion to preclude Debtor and CCB from offering documents in evidence at a hearing or trial in support of their respective claims and defenses that were not produced in discovery, as set forth herein. The Court also grants Defendants' request for reasonable attorneys' fees and costs and directs Defendants to submit an affidavit

detailing such fees and costs incurred as a result of Debtor's and CCB's noncompliance with the ruling at the April 13 Hearing and the April 17 Order. *See generally Zhao v. E. Harlem Laundromat, Inc.*, No. 07 CIV. 0201 (RJS), 2009 WL 10738062, at \*1 (S.D.N.Y. Feb. 26, 2009).

### A. Willfulness of Non-Compliant Party

A party's non-compliance with discovery orders is considered willful "when the court's orders have been clear, when the party has understood them, and when the party's noncompliance is not due to factors beyond the party's control." *See Thilman*, 548 B.R. at 9 (internal citations omitted) (noncompliance was willful where defendant failed to respond to plaintiff's document requests and appear for deposition in violation of two court orders, failed to respond to motions seeking sanctions, and failed to appear at hearings). A party's "persistent refusal to comply with court orders presents sufficient evidence of willfulness, bad faith or fault." *See generally Grammar v. Sharinn & Lipshie, P.C.*, No. 14 CIV. 6774 (JCF), 2016 WL 525478, at \*3 (S.D.N.Y. Feb. 8, 2016) (internal quotations omitted); *see also, e.g.*, *Gayvoronskaya v. Americare, Inc.*, No. 15-CV-6641-DLI-SJB, 2019 WL 1352681, at \*5 (E.D.N.Y. Feb. 19, 2019); *Coach, Inc. v. O'Brien*, No. 10 CIV. 6071 JPO JLC, 2012 WL 1255276, at \*8 (S.D.N.Y. Apr. 13, 2012).

For the reasons set forth below, the Court concludes that the parties' noncompliance with the ruling at the April 13 Hearing and the April 17 Order was willful. Neither Debtor nor CCB corrected or supplemented their responses to the PHH Requests by the close of discovery. *See* May 25 Hear'g Tr. at 5:7-10 (wherein former counsel for PHH notes—and Debtor and former counsel for CCB did not dispute—that PHH has "not received any response, or supplemental response, from either the Debtor, third-party defendant CCB, or subpoenaed non-party CN Capital, in response to [PHH's] subpoena").

### 1. The Court's Ruling on the Record at the April 13 Hearing, and the April 17 Order that Followed, Were Clear.

The April 17 Order was both clear and consistent with the Court's ruling on the record at the April 13 Hearing. *See* Apr. 17 Order at 2 (requiring Debtor and CCB to file and serve compliant discovery responses "***[f]or the reasons set forth on the record***" by May 12, 2023 (emphasis added)).

Debtor and former counsel for CCB both appeared at the April 13 Hearing, during which the Court provided a fulsome explanation as to why the discovery responses failed to comply with the Federal Rules of Civil Procedure:

> The responses, and I've noted this at prior hearings[24], the responses that N City/Corporate Capital Brokers gave and that Ms. Doresca gave to the document demand[,] which is the Rule 34[,] and the interrogatories[,] which is the Rule 33[,] were insufficient and not in compliance with what Rule 33 says you must do in responding to interrogatories and what Rule 34 says you must do in responding to a Rule 34 document request[.] . . . [T]he boilerplate-type of objection lodged in response to those discovery demands . . . went out of vogue when the Federal Rules of Civil Procedure were amended in December of 2015[,] and even before December of 2015's amendment of the type and the nature of the responses[,] may not have carried the day in any event.

Apr. 13 Hear'g Tr. at 48:15-49:2. The Court explained, in detail, what remained for Debtor and CCB to do in order to properly respond to the PHH Requests and gave Debtor and counsel for CCB an opportunity to file a proper response. *Id.* at 49:3-13. Furthermore, the Court cited

---

[24] The April 13 Hearing was not the first time the Court raised this issue of compliance with the 2015 amendment to the Federal Rules. Indeed, the issue was raised with former counsel for CCB as early as January 26, 2023:

> THE COURT: -- I should point out to you, Ms. Aregbesola, with respect to the motion to compel discovery from your client Corporate Capital Brokers that going forward you need to study Rule 34 and Rule 33 with respect to a proper response to discovery requests. The argument of it's overbroad, it's burdensome, that kind of argument in many instances would not have passed muster even before December of 2015, when the Federal Rules of Civil Procedure were amended. But come December 2015, the Federal Rules of Civil Procedure were amended. In particular, Rule 33, interrogatories, and Rule 34, document requests, now set forth the specific nature of the response that must be provided to a document request under Rule 34 and a request for interrogatories under Rule 33. So I point that out for you because as we go down the line here, there may be other instances of discovery. And so those are items that you need to be apprised of. . . .

> MS. AREGBESOLA: Thank you, Your Honor.

*See* January 26 Hear'g Tr. 22:10-23:3.

applicable case law on the record. (*Id.* at 49:20-50:3 (wherein the Court discusses *Fischer*, a "decision written by now retired Magistrate Judge Peck in the Southern District of New York" that "is an instruction for attorneys on how to respond now with specificity when served with a Rule 34 document request, for example, and . . . that type of logic . . . carries over to the same issue when you're responding to the interrogatories"); *see also Fischer v. Forrest*, No. 14 CIV 1304 (PAE) (AJP), 2017 WL 773694, at *1, 3 (S.D.N.Y. Feb. 28, 2017).

The Court thus made clear that it was giving Debtor and CCB the opportunity to file compliant responses and ordered that the parties do so by May 12, 2023.[25] *See* April 13 Hear'g Tr. at 50:4-8 ("So, Ms. Doresca will have an opportunity now to file a compliant response under Rule 33 and Rule 34. Ms. Aregbesola, you also will have an opportunity to file a compliant response in accordance with Rule 33 and Rule 34."); *id.* at 52:16-22 (wherein the Court noted that it was extending the time for discovery for the "limited purpose" of "allow[ing] Ms. Doresca and Ms. Aregbesola to file [compliant] responses to Rule 33 and Rule 34" and noting that the Rules "give[] you the roadmap for doing that[,] including signing the responses"); *see also* September 20 Hear'g Tr. at 39:16-40:3 (summarizing record of April 13 Hearing).

### 2. The Record Does Not Support a Finding that Debtor and CCB Failed to Understand the Court's Ruling.

Former counsel for CCB expressly acknowledged the court-ordered deadline at the April 13 Hearing. *See* April 13 Hear'g Tr. at 53:23-25 (The Court: "And, Ms. Aregbesola, 30

---

[25] The Court again reminded the parties at the September 20 Hearing of its determination at the April 13 Hearing. *See* Sept. 20 Hear'g Tr. at 34:14-35:3 ("I explained to you and Ms. Aregbesola why the discovery responses did not comply with the requirements set forth in the Federal Rules of Civil Procedure, Rule 33 with respect to interrogatories, Rule 34 with respect to a document request, and to the extent there was a Rule 36 request for admissions, the same thing. I explained it all on the record and then permitted you an additional period of time, as well as Ms. Aregbesola an additional period of time to respond to discovery. . . . You're now given the do over, as was Ms. Aregbesola, to respond to discovery demands.").

days to file a compliant response to the Rule 33 and Rule 34 requests?" Ms. Aregbesola: "Yes, Your Honor.").

As discussed *supra*, the Court directly—and repeatedly—addressed Debtor on the record regarding the deadline. *See id.* at 50:4-5, 52:16-22; *see also id.* at 54:2-7 (The Court: "Thank you. Ms. Doresca, we'll keep you on the exact same track so you will have 30 days to file a compliant response under Rule 33 and Rule 34 to the document demand and the interrogatories that were served upon you. And so that puts us now on track, fairness to everybody."). Despite having ample opportunity to do so, Debtor did not raise any questions or issues at any point in response to the Court's ruling.

### a. *Debtor's Contentions Regarding the Court's Findings Are Belied by the Record.*

Debtor maintains that she has not engaged in "any instance of willful disobedience of any Court Order in this case[.]" [Dkt. No. 235 ¶¶ 39, 107.[26]] To the contrary, Debtor argues that she "did comply with the Order of the Court which ordered that [Debtor] serve a response" to the discovery requests, as she "did serve [a response] upon PHH." [Dkt. No. 235 ¶ 35; Dkt. No. 236 ¶¶ 6-7.][27]

---

[26] Debtor's filings cited in this section [Dkt. Nos. 235, 236] were filed in support of the July Cross-Motion, which is not presently before this Court for the reasons stated herein. The Court addresses relevant arguments made therein in response to the Rule 37 Motion, however, to the extent that Debtor purports to incorporate them in the Renewed Cross-Motion. [*See* Dkt. No. 244 (wherein Debtor refers to "previously filed" cross-motion in memorandum of law); Dkt. No. 247 (including the language, "together with [Debtor's] previously filed Memorandum of Law in Support of Cross-Motion for Sanction and in opposition to Defendant's Rule 37 motion).]

[27] Debtor insists that she "supplemented" her responses pursuant to Rule 26(e). [Dkt. No. 236 ¶ 7 ("[U]nder Rule 26(e)(1)(A), Plaintiff served her supplemental response on Counsel for Defendants, in light of the fact that discovery is ongoing as Counsel for Defendants were notified in Plaintiff['s] prior response and that Plaintiff reserved her rights to supplement her responses as soon as more information became available."). As noted on the record at the September 20 Hearing, Debtor improperly invokes Rule 26(e) in her pleadings. *See* Sept. 20 Hear'g Tr. 23:25-26:1 (wherein the Court clarifies that, while parties have a duty to supplement automatic disclosures under Rule 26(a)—as well as their responses if those responses were incomplete or incorrect—Rule 26(e) may not be invoked by the party that *had* the requested documents or information in its possession, custody, or control prior to the close of discovery, but nevertheless failed to timely comply).

Debtor's position is premised on her contention that "[t]he Court **did not** find that Plaintiffs responses to PHH's discovery demands were insufficient or required to be supplemented and **did not** order that Plaintiff file supplemental responses or otherwise correct its disclosure or responses to PHH's discovery request." [Dkt. No. 235 ¶ 35 (emphasis in original); *id.* ¶ 39 ("Additionally, the Order of the Court did not direct Plaintiff to supplement her responses because it found that her initial responses were insufficient.")] This is expressly belied by the record, and by the language of the order itself, for the reasons set forth *supra* Section II.A. Debtor ignores that the April 17 Order refers to, and incorporates, the Court's findings and conclusions at the April 13 Hearing.[28] As discussed *supra*, the Court concluded that Debtor's responses failed to comply with the Federal Rules of Civil Procedure. *See* Apr. 13 Hear'g Tr. at 48:15-49:2. While the Court acknowledged that Debtor might have already produced all responsive documents in her possession, custody, or control, the Court nevertheless made clear that Debtor was still required to serve required responses, in order to amend the general objections and boilerplate language therein, by May 12, 2023. *See id.* at 49:12-19 ("[I]f, for example, there are ten documents requested, it may very well be that you have no responsive documents, or it may very well be that you only have one responsive document, ***but you have to provide your response to a Rule 34 and a Rule 33 just as instructed by the Federal Rules of Civil Procedure.***" (emphasis added)).

It is unclear whether Debtor is taking the position that she misunderstood the April 17 Order. On the one hand, Debtor maintains unequivocally that she did not violate the order. On the other hand, Debtor seems to suggest that her course of conduct was based on her interpretation of the order—an interpretation that is diametrically opposed to the Court's

---

[28] Debtor omits reference to the Court's ruling at the April 13 Hearing from her pleadings entirely.

findings and conclusions on the record. [*See* Dkt. No. 235 ¶ 39 ("The Order of the Court directed that Plaintiff respond to PHH's Demands. Plaintiff understood that to mean that she had already responded and where there was no finding that her initial responses were insufficient by this Court then she had already complied with the order of the Court.").] Nevertheless, to the extent Debtor is taking this position, such an argument is unavailing. The Court directly addressed Debtor at the April 13 Hearing, identified the deficiencies in her responses, and directed Debtor to resources that would provide further instruction as to how to bring her responses into compliance with the Federal Rules. Many of these same issues were also identified in the Debtor Deficiency Letter, dated March 8, 2022. *See* Roberts Decl., Ex. 8. Debtor had ample opportunity to seek clarification of the April 17 Order—or to request a copy of the transcript of the April 13 Hearing for purposes of reviewing the Court's ruling. Debtor did not take any such action. *See Davidson v. Dean*, 204 F.R.D. 251, 255 (S.D.N.Y. 2001) (observing that party "had more than ample opportunity to resolve any ambiguity that may have existed").

Furthermore, Debtor is no stranger to litigation, and to the discovery process, in federal courts. *See Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*, No. 16CV1318GBDBCM, 2018 WL 4760345, at *10 (S.D.N.Y. Sept. 28, 2018) (rejecting argument that party did not understand order in connection with "willfulness" prong where party was "no stranger to federal litigation, and ha[d] a history of discovery noncompliance followed by sanctions"). Indeed, Debtor has been before this Court on numerous occasions. *See, e.g., In re Daphnee Doresca* (Case No. 15-70486); *In re Daphnee Doresca* (Case No. 15-74157); *Doresca v. Wells Fargo Home Mortgage* (Case No. 15-08265); *Doresca v. Indymac Bank, FSB* (Case No. 16-08049); *In re Daphnee Doresca* (Case No. 16-75006); *Doresca v. HSBC Bank USA, Nat'l Ass'n* (Case No. 17-08019); *Doresca v. Onewest Bank, FSB* (Case No. 17-08213).

### b.   *That Debtor Purported to Supplement Her Responses Over Two Months After the Court-Ordered Deadline Does Not Alter the Court's Conclusion.*

Debtor further argues that, in any event, she "served her supplemental responses to Counsel for PHH" on July 31, 2023, thereby "ameliorat[ing]" any "perceived prejudice." [Dkt. No. 235 ¶ 39.]

That Debtor produced several documents and served responses beyond the deadline does not alter the Court's willfulness analysis. *See In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 673 F.Supp.3d at 357 (awarding sanctions against party that undertook efforts to comply with discovery order after the court-ordered deadline and observing that "[t]he reality is . . . that it should not have taken a Court order" for the party to comply and the failure to take steps much sooner "unnecessarily delayed the progress of the action"); *see also Handwerker v. AT&T Corp.*, 211 F.R.D. 203, 210 (S.D.N.Y. 2002) (awarding sanctions and noting that the "belated offer to comply after the expiration of the deadline the Court's last Order imposed is now unavailing"); *Miltope Corp.*, 163 F.R.D. at 194 (concluding that sanctions were proper where plaintiff "merely ignored the deadlines and served . . . interrogatory answers one month late").

Discovery deadlines matter. Debtor displayed willful noncompliance when she allowed the Court's deadline—a deadline that was already well beyond the original completion date—to pass without serving compliant responses. Debtor served supplemental responses over two months after the close of discovery—and one month after Defendants filed the Rule 37 Motion. Debtor's unsubstantiated excuses for noncompliance are unavailing.

### 3.   Debtor and CCB Failed to Offer Adequate Proof that Circumstances Beyond Their Control Prevented Them from Locating and Producing Additional Responsive Documents.

Debtor and CCB have suggested that circumstances beyond their control have contributed to their inability to comply with court-ordered deadlines. *See* May 25 Hear'g Tr.

5:4-7:6 (wherein former counsel for CCB notes difficulties with contacting client and signals her intention of withdrawing from representation); Sept. 20 Hear'g Tr. 26:2-6 (wherein Debtor suggests that delay was because Debtor was out of the country and unable to locate documents).

Neither Debtor nor CCB has demonstrated how such circumstances prevented them from revising and serving responses that complied with the Federal Rules of Civil Procedure. Indeed, neither has offered sufficient evidence of any such circumstances. *See generally Lavely v. Redheads, Inc.*, No. 03 CIV. 7752 (RMB), 2006 WL 318835, at *3 (S.D.N.Y. Feb. 9, 2006) (noting defendants' failure to offer "adequate proof" in support of contention that failure to comply with discovery was based on circumstances beyond their control).

## B.  Efficacy of Lesser Sanctions

This Court has recognized that, "[a]s to the second factor, the availability of a less drastic sanction, 'a court should always seek to impose the least harsh sanction that will remedy the discovery violation and deter such conduct in the future.'" *See Thilman*, 548 B.R. at 10 (quoting *Silva*, 2014 WL 3809095, at *3). Even so, a "court is 'not required to exhaust possible lesser sanctions before imposing dismissal or default if such a sanction is appropriate on the overall record.'" *Id.* (quoting *Shcherbakovskiy v. Seitz*, 450 Fed. App'x 87, 88 (2d Cir. 2011)). The range of sanctions, from the least harsh to the harshest, includes ordering further discovery, cost-shifting, fines, special jury instructions, preclusion, entry of default judgment, and dismissal." *See In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 673 F.Supp.3d at 354; *see also Thilman*, 548 B.R. at 7 (noting that "[s]anctions range in severity").

Lesser sanctions, such as further discovery orders and monetary sanctions, would not be effective here. Debtor and CCB have each displayed continuous disregard for discovery deadlines in this adversary proceeding. On December 2, 2021, the Court entered the Initial Scheduling Order, which contemplated the completion of discovery by March 1, 2022. [Dkt.

No. 112.] Due to Debtor's and CCB's repeated delays—and, in many instances, outright refusal to respond—the Court is still resolving discovery disputes over two years beyond the initial completion deadline. Debtor failed to timely respond to the Debtor Requests, and failed to respond to the Debtor Deficiency Letter, which prompted Defendants to file a motion to compel. While CCB initially timely responded to the CCB Requests, CCB failed to respond to the CCB Deficiency Letter. Both Debtor and CCB then failed to supplement their discovery responses by May 12, 2023, as directed by the Court at the April 13 Hearing and in the April 17 Order. Any productions made to date have consisted of only a few documents at a time— and have routinely been shared well beyond relevant deadlines. Further discovery orders would therefore be an "exercise in futility," *Coach*, 2012 WL 1255276, at *9, and monetary sanctions would not yield a different result, *Consumer Fin. Prot. Bureau v. NDG Fin. Corp.*, No. 15CIV5211CMRWL, 2018 WL 1605067, at *6.

It is clear that "[g]entle chastisement is not the answer" under these circumstances. *See Del Turco v. New York Stone Co.*, No. 06 CIV. 3367 (LAK), 2007 WL 9809149, at *2 (S.D.N.Y. Sept. 6, 2007) (concluding that "lesser sanctions would be useless" where parties "defied a court order to produce discovery" and "ignored the court-ordered discovery deadline"). However, in light of the guiding principle that "a court should always seek to impose the least harsh sanction that will remedy the discovery violation and deter such conduct in the future[,]" the Court declines to strike and dismiss Debtor's complaint, and to strike CCB's answer and award a default judgment against CCB. *See generally Thilman*, 548 B.R. at 10 (quoting *Silva*, 2014 WL 3809095, at *3).

It is well-established that courts have "wide discretion to . . . determine the type of sanction to be imposed under Rule 37(b)." *See generally Shiqiang Gao v. Umi Sushi, Inc.*, No. 1:18-CV-06439 (ALC), 2020 WL 352641, at *2 (S.D.N.Y. Jan. 21, 2020); *Auscape Int'l v. Nat'l*

*Geographic Soc'y*, No. 02 CIV. 6441 LAKHBP, 2003 WL 21976400, at *6 (S.D.N.Y. Aug. 19, 2003), *aff'd sub nom. Auscape Int'l v. Nat. Geographic Soc'y*, No. 02 CIV. 6441 (LAK), 2003 WL 22244953 (S.D.N.Y. Sept. 29, 2003) ("Although . . . Rule 37(b) permits sanctions to be imposed only when a court order, either written or oral, has been violated . . . once such a violation occurs, a court has broad discretion in determining what sanction to impose."); *Davidson*, 204 F.R.D. at 255 ("The court has broad discretion in determining whether Rule 37 sanctions are appropriate, and, if so, what sanction should be imposed.").

The Court thus concludes that preclusion is the appropriate sanction here. *See Ho v. Target Construction of NY Corp.*, No. 08-CV-4750(KAM)(RER), 2010 WL 2292202, at *1, *4 (E.D.N.Y. June 3, 2010) (declining to strike defendant's answer and enter a default judgment, but precluding defendant from offering any evidence at trial in support of his defense); *Techky v. City of New York*, No. 98 CIV. 7643 (HB), 2000 WL 48862, at *3 (S.D.N.Y. Jan. 20, 2000) (declining to dismiss case but precluding the introduction of certain evidence and striking portion of complaint where "[i]t [was] apparent from the record that plaintiffs disregarded not only this Court's discovery order, but ignored the basic obligations of discovery"); *see also Sentry Ins. a Mut. Co. v. Weber*, 720 F. App'x 639, 640 (2d Cir. 2017) (concluding that the district court did not abuse its discretion by precluding appellant from offering evidence to oppose appellee's claim as a sanction for discovery violations).

Courts have entered preclusion orders pursuant to Rule 37 where parties "have repeatedly shown a disregard" for the discovery process and court orders, resulting in "long delays" in a case and prejudicing other parties' ability to litigate. *See, e.g., Abouelmakarem v. MDNMA Inc.*, No. 21-CV-10625 (LJL), 2023 WL 3559392, at *8 (S.D.N.Y. May 18, 2023); *see also Shanghai Weiyi Int'l Trade Co. v. Focus 2000 Corp.*, No. 15CV3533CMBCM, 2017 WL 2840279, at *10 (S.D.N.Y. June 27, 2017) (observing that "preclusion orders are entirely

appropriate where the disobedient party has violated a court order to produce the evidence necessary to resolve the issue as to which preclusion is sought"). Indeed, preclusion orders "are entirely appropriate where the disobedient party has violated a court order to produce the evidence necessary to resolve the issue as to which preclusion is sought." *See Abouelmakarem*, 2023 WL 3559392, at *8 (citing *Shanghai Weiyi Int'l Trade Co.*, 2017 WL 2840279, at *10); *see also Sentry Ins. A Mut. Co. v. Brand Mgmt., Inc.*, 295 F.R.D. 1, 5 (E.D.N.Y. 2013) (noting that an order of preclusion "is strong medicine, [but] such orders are necessary on appropriate occasion to enforce compliance with the discovery rules and maintain a credible deterrent to potential violators") (internal citations omitted); *Daval Steel Prod., a Div. of Francosteel Corp. v. M/V Fakredine*, 951 F.2d 1357, 1367 (2d Cir. 1991) (same). This is the case here.

Accordingly, the Court concludes that Debtor and CCB have "forfeited [their] own right to introduce" at trial any documents that should have been produced, but were not produced, in response to the PHH Requests. *See id.*; *Shanghai Weiyi Int'l Trade Co.*, 2017 WL 2840279, at *15. Furthermore, Debtor and CCB have forfeited their right to testify as to the contents of, or otherwise rely on, any such documents that were not produced. *See Abouelmakarem*, 2023 WL 3559392, at *8; *Shanghai Weiyi Int'l Trade Co.*, 2017 WL 2840279, at *15.

### C. Duration of Period of Noncompliance

As discussed *supra*, Debtor and CCB have exhibited a pattern of callous disregard for discovery deadlines and directives issued by this Court. *See generally Thilman*, 548 B.R. at 8. The CCB Requests were served on December 17, 2021, and the Debtor Requests were served on January 7, 2022. CCB and Debtor had notice of the deficiencies in their responses as early as January 25, 2022, and March 8, 2022, respectively, when former counsel for PHH sent the Deficiency Letters. CCB and Debtor made no effort to serve compliant responses,

forcing Defendants to file the Motion to Compel. Following the April 13 Hearing, the Court afforded Debtor and CCB yet *another* thirty days—despite the fact that responses were already long overdue—to comply. CCB and Debtor ignored this deadline. Such a prolonged period of noncompliance is more than sufficient to justify imposing sanctions. *See generally Schuster v. Charter Commc'ns, Inc.*, No. 18-CV-1826 (RJS), 2021 WL 1317370, at *7 (S.D.N.Y. Apr. 8, 2021) ("The Second Circuit has regularly upheld the imposition of dispositive sanctions when a party's dilatory tactics have persisted for several months."); *Duncan v. Sullivan Cnty.*, No. 18CIV9269PMHPED, 2021 WL 6884505, at *19 (S.D.N.Y. Dec. 29, 2021), *report and recommendation adopted*, No. 18CV9269PMHPED, 2022 WL 594181 (S.D.N.Y. Feb. 28, 2022) (noting "extraordinary" period of noncompliance where plaintiff received five extensions beyond deadline imposed in initial discovery order, plaintiff failed to comply with any deadlines, and fact discovery remained at a standstill).[29]

### D. Whether Noncompliant Party Had Been Warned of Consequences

It has been established that, "[a]lthough formal warnings often precede the imposition of serious sanctions, [the Second Circuit] has never considered warnings an absolute condition precedent." *See Daval Steel Prod.*, 951 F.2d at 1366 ("We decline to hobble the necessary discretion of district courts to control discovery by imposing a further requirement of formal and specific warnings before imposing Rule 37(b)(2) sanctions, bearing in mind that . . . such sanctions can only be imposed for violation of a specific, previously entered court order. Parties and counsel have no absolute entitlement to be "warned" that they disobey court orders at their peril."); *see also In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 673 F.Supp.3d at 362 (citing *Daval Steel*).

---

[29] As discussed *supra*, the Court entered the Initial Scheduling Order in this adversary proceeding on December 2, 2021, which contemplated the completion of discovery by March 1, 2022. [Dkt. No. 112.]

The Court repeatedly stressed the importance of compliance with the Federal Rules of Civil Procedure at the April 13 Hearing and cited case law regarding same. *See supra* Section II.A.1. Furthermore, Debtor and CCB had notice of potential sanctions at the status conference on May 25, 2023. Debtor and former counsel for CCB both appeared at the status conference, where counsel for PHH signaled its intention "to move to strike the pleadings, or at least move for attorneys' fees in connection with the discovery that has not been completed and has not been sufficiently responded to." *See* May 25 Hear'g Tr. at 5:12-15; Rule 37 Mot. at 13, 15. The Court noted on the record that it would consider any forthcoming motion brought by Defendants pursuant to Rule 37. *See* May 25 Hear'g Tr. at 7:9-14; *id.* at 12:4-9.

## III. ATTORNEYS' FEES AND COSTS PURSUANT TO RULE 37(b)(2)(C) ARE APPROPRIATE.

Defendants also seek to recover attorneys' fees and costs incurred in connection with the failure of Debtor and CCB to properly respond to the discovery requests. Rule 37 Mot. at 16-17.

The Second Circuit has recognized that "a party that disregards its [discovery] obligations may create a reasonable suspicion that further investigation is warranted, and thereby imposes costs on its adversary that would never have been incurred had the party complied with its [discovery] obligations in the first instance." *See Klipsch Grp., Inc. v. ePRO E-Com. Ltd.*, 880 F.3d 620, 634 (2d Cir. 2018). An "award of monetary sanctions compensates the adversary 'for costs it should not have had to bear.'" *See In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 673 F. Supp. 3d at 353 (citing *Klipsch Grp.*). Courts have acknowledged that "[m]onetary sanctions are the norm, not the exception, when a party is required to engage in motion practice in order to obtain the discovery to which it is entitled." *See, e.g.*, *Shnyra v. State St. Bank & Tr. Co.*, No. 1:19-CV-2420-GHW, 2020 WL 6892078, at *10 (S.D.N.Y. Nov. 24, 2020) (internal citations omitted).

Rule 37(b)(2)(C) provides that, "[i]nstead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C). Neither Debtor nor CCB has met its burden to show that there was a substantial justification for violating the April 17 Order, or that circumstances would make an award of reasonable expenses unjust. *See Patino*, 2016 WL 8677284, at *3. CCB did not file a response to the Rule 37 Motion. [*See* Dkt. No. 248.] In her responsive pleadings, Debtor insists that she did *not* violate the April 17 Order and does not address Defendants' request for fees and expenses. Additionally, Debtor does not provide the Court with any reason to believe that she did not have in her possession, custody or control the very documents she ultimately produced after the close of discovery—and after the Rule 37 Motion was filed. *See E.L.A.*, 2020 WL 5682019, at *5.

Therefore, the Court grants Defendants' request and directs Defendants to submit an affidavit detailing the attorneys' fees and costs incurred in connection with Debtor's and CCB's noncompliance with the April 17 Order. *See generally Zhao*, 2009 WL 10738062, at *1. The Court will then determine whether the requested fees are reasonable. *See Karsch*, 2019 WL 6998563, at *1 (wherein the court cited earlier decision finding that defendants were entitled to an award of fees and expenses and directing defendants to submit declarations, and subsequently proceeded with "reasonableness" analysis).

## CONCLUSION

For the reasons set forth above, the Court finds that Debtor and CCB have failed to comply with their discovery obligations and exercises its discretion to preclude Debtor and CCB from offering documents in evidence at a hearing or trial in support of their respective claims and defenses that were not produced in discovery. Accordingly, the Court concludes

that Debtor and CCB have forfeited their right to introduce at a hearing or trial any documents that should have been produced, but were not produced, in response to the PHH Requests. Furthermore, Debtor and CCB have forfeited their right to testify as to the contents of, or otherwise rely on, any such documents that were not timely and properly produced.

The Court grants Defendants' request for reasonable attorneys' fees and costs for prosecution of the Rule 37 Motion, the specific amount of which shall be determined after submission of supplemental documents. Accordingly, by May 3, 2024, Defendants shall file and serve an affidavit and supporting papers detailing such fees and costs incurred because of Debtor's and CCB's noncompliance with their discovery obligations and the Order of the Court dated April 17, 2023. Opposing papers, if any, shall be filed and served by May 17, 2024.

So Ordered.

Dated: April 19, 2024
        Central Islip, New York



_____
Louis A. Scarcella
United States Bankruptcy Judge