UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
In re:

Daphnee Doresca,

                          Debtor.

------------------------------------------------------------------X
Daphnee Doresca,

                          Plaintiff,

    -against-

IndyMac Bank, FSB, OneWest Bank, FSB,
Ocwen Loan Servicing, LLC, et al.,

                          Defendants.
------------------------------------------------------------------X

Case No. 8-16-75006-las

Chapter 7

Adv. Pro. No. 8-17-08213-las

## MEMORANDUM DECISION AND ORDER AWARDING ATTORNEYS' FEES AND COSTS PURSUANT TO RULE 37 OF THE FEDERAL RULES OF CIVIL PROCEDURE

In this adversary proceeding, plaintiff and debtor Daphnee Doresca ("Debtor"), now appearing *pro se*,[1] asks this Court to determine the validity, priority, or extent of a mortgage lien asserted by defendants PHH Mortgage Corporation ("PHH"), successor by merger with Ocwen Loan Servicing, LLC ("Ocwen") and OneWest Bank, FSB ("One West" and, together with PHH, "Defendants") against the real property located at 199 William Street, Hempstead, New York (the "Property"). *See generally* First Amended Adversary Complaint

---

[1] Debtor was represented by counsel at the time this adversary proceeding was commenced. Debtor terminated that engagement and proceeded *pro se*. Subsequently, at various stages of this adversary proceeding, Debtor hired two other law firms to represent her. Each law firm requested, and was granted leave, to withdraw as counsel.

1

(the "First Amended Complaint" or "FAC").[2] [Dkt. No. 81.][3] In the First Amended Complaint, Debtor alleged that after she acquired the Property pursuant to a default judgment entered against the original borrower, Carla Desrouilleres, in the Supreme Court of the State of New York, County of Nassau, Ocwen assigned its mortgage to N City Corporate Builders, Inc. ("N City") and Debtor thereafter satisfied the mortgage debt by remitting payment to N City. Debtor further alleged that to the extent it is determined that Defendants hold a mortgage against the Property, Defendants are time-barred under the relevant statute of limitations from seeking to foreclose the mortgage.

For their part, Defendants have contested the validity of the alleged assignment and satisfaction of the mortgage and argue that the applicable statute of limitations has yet to expire. *See generally* Answer and Counterclaim. [Dkt. Nos. 96, 99.] PHH asserted a counterclaim, and Debtor answered the counterclaim. [Dkt. No. 109.] Defendants also filed a third-party action against Debtor and N City seeking a determination as to the parties' respective rights in and to the Property and to expunge both the assignment of mortgage and the subsequent satisfaction of mortgage. The third-party action as against Debtor was dismissed solely on procedural grounds, and N City was joined as an additional party to Defendants' counterclaim. *See Memorandum Decision and Order on Motion to Dismiss Third-Party Complaint*. [Dkt. No. 211.] After joinder, Corporate Capital Brokers, LLC ("CCB"), successor-in-interest to N City[4], filed an answer to Defendants' counterclaim. [Dkt. No. 213.]

---

[2] The First Amended Complaint is the operative complaint in this adversary proceeding. [Dkt. No. 81.] Debtor moved for leave to file a second amended complaint [Dkt. Nos. 119, 124, 126], and Defendants opposed Debtor's motion to amend [Dkt. No. 125]. The Court denied Debtor's request in the *Memorandum Decision and Order* dated March 24, 2023 [Dkt. No. 196] (the "March 24 Order").

[3] Unless otherwise stated, all docket references to the adversary proceeding are cited as "[Dkt. No. __]" and all docket references to the related bankruptcy case of the Debtor, Case No. 8-16-75006-las, are cited as "[Bankr. Dkt. No. __]."

[4] According to former counsel for N City, CCB is the successor in interest to N City. For ease of reference, the Court refers to the purported assignee of the mortgage as N City.

2

Now before the Court is a determination of the attorneys' fees and costs to be awarded pursuant to the decision issued on April 19, 2024 [Dkt. No. 290] (the "Rule 37 Decision"). The Rule 37 Decision resolved Defendants' motion, pursuant to Rule 37 of the Federal Rules of Civil Procedure, seeking case-terminating sanctions against both Debtor and CCB for failing to perform their obligations under the discovery rules and the discovery scheduling order entered by the Court [Dkt. No. 219] (the "Rule 37 Motion" or "Rule 37 Mot."). *See infra* Background Section II.

For the reasons set forth below, the Court awards attorneys' fees in the amount of $5,000 and declines to award costs. The Court directs Debtor and CCB each to pay $2,500 of the total attorneys' fee award.[5] Debtor and CCB shall remit payment of their respective portions of the award within thirty days of entry of this decision.

## JURISDICTION

The Court has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b) and the Standing Order of Reference of the United States District Court for the Eastern District of New York, dated August 28, 1986 (Weinstein, C.J.), as amended by Order dated December 5, 2012 (Amon, C.J.) entered in accordance with 28 U.S.C. § 157(a).

---

[5] Blank Rome LLP and Houser LLP shall determine their respective apportionments of the total amount of awarded fees and distribute accordingly.

## BACKGROUND[6]

### I. DEFENDANTS' RULE 37 MOTION AND DEBTOR'S RENEWED CROSS-MOTION

Following a series of discovery disputes[7], on June 23, 2023, Defendants filed the Rule 37 Motion seeking entry of an order: (1) striking and dismissing Debtor's complaint; (2) striking CCB's answer and awarding default judgment against CCB in PHH's favor; and (3) awarding attorneys' fees and costs incurred by Defendants in connection with the failure of Debtor and CCB to respond to Defendants' discovery requests, together with such other and further relief as the Court deems just and proper.

On July 25, 2023, Debtor filed a cross-motion [Dkt. No. 229] (the "July Cross-Motion"), purportedly in response to the Rule 37 Motion, seeking an order: (1) dismissing the causes of action asserted against her in the Third-Party Complaint[8] pursuant to Rules 12(b)(1), 12(b)(6) and 9(b); (2) cancelling and discharging of record the mortgage asserted by Defendants on the Property pursuant to N.Y. R.P.A.P.L § 1501(4); (3) determining that Debtor is a bona fide purchaser for value pursuant to N.Y. R.P.L. § 266;[9] (4) imposing sanctions against Andrea Roberts, Esq., Blank Rome LLP, and PHH for a violation of the automatic stay pursuant to § 362(a)(4),(5), § 362(k)(1) and § 105, and expunging the alleged

---

[6] The parties' familiarity with the facts and procedural history is presumed as set forth in prior decisions of the Court. *See* Rule 37 Decision at 1-3, 6-12; Renewed Cross-Motion Decision at 1-4, 5-8; *see also* March 24 Order [Dkt. No. 196]; *Memorandum Decision and Order on Motion to Dismiss Third-Party Complaint*, dated May 16, 2023 [Dkt. No. 211] (the "May 16 Order"). The Court recounts only those facts and procedural history that are pertinent to the disposition of the pending motion.

[7] *See* Rule 37 Decision at 6-10.

[8] The Third-Party Complaint was dismissed as against Debtor solely on procedural grounds two months before she filed the July Cross-Motion. *See* May 16 Order [Dkt. No. 211]. PHH asserted a counterclaim against Debtor in this adversary proceeding [Dkt. No. 99], and Debtor answered the counterclaim [Dkt. No. 109].

[9] The Court denied Debtor's motion for leave to file a second amended complaint to add a claim that she is a bona fide purchaser for value **four months before** Debtor filed the July Cross-Motion. *See generally* March 24 Order [Dkt. No. 196].

4

post-petition lien created in favor of PHH on September 24, 2019 and filed on October 27, 2019 by Blank Rome, IndyMac Bank, F.S.B., OneWest, Ocwen, and PHH encumbering the Property; (5) relieving Debtor of the March 24 Order pursuant to Rule 60(a); (6) for sanctions striking PHH's answer to Debtor's First Amended Complaint pursuant to Rule 37; (7) for sanctions expunging post-petition mortgage lien; and (8) awarding such other relief as the Court deems proper. Debtor also opposed the Rule 37 Motion. [Dkt. No. 229.] Defendants filed their reply in support of the Rule 37 Motion and in opposition to the July Cross-Motion on July 28, 2023 (the "July Cross-Motion Opposition" or "July Cross-Mot. Opp."). [Dkt. No. 232]. On July 31, 2023, Debtor filed a memorandum of law in support of the July Cross-Motion, along with an accompanying declaration. [Dkt. Nos. 235, 236].

At a hearing held on August 1, 2023 (the "August 1 Hearing"), the Court advised Debtor that the July Cross-Motion was improper because the relief requested could not be brought as a cross-motion. *See* Aug. 1 Hear'g Tr. at 11:25-12:23; *id.* at 20:3-15. On August 16, 2023, Debtor filed another self-styled cross-motion (the "Renewed Cross-Motion"), including arguments and requests for relief substantially similar to those made in the July Cross-Motion. [Dkt. No. 244]. In the Renewed Cross-Motion, Debtor sought an order: (i) dismissing the counterclaim asserted against Debtor pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 9(b)[10] (the "First Request for Relief"); (ii) cancelling and discharging the mortgage on the Property pursuant to N.Y. R.P.A.P.L. § 1501(4) (the "Second Request for Relief"); (iii) relieving Debtor of the March 24 Order pursuant to Rule 60(b)(1)-(5)[11] (the "Third Request for Relief"); and (iv) denying the Rule 37 Motion as moot, because the statute

---

[10] Federal Rules of Civil Procedure 12(b) and 9(b) are made applicable to this adversary proceeding by Rules 7009 and 7012(b) of the Federal Rules of Bankruptcy Procedure.

[11] Federal Rule of Civil Procedure 60(b) is made applicable to this adversary proceeding by Rule 9024 of the Federal Rules of Bankruptcy Procedure.

5

of limitations precludes the Court from adjudicating this matter (the "Fourth Request for Relief"). On September 13, 2023, Defendants timely filed their declaration in opposition to the Renewed Cross-Motion. [Dkt. No. 246]. Debtor filed an untimely declaration and memorandum of law in further support of the Renewed Cross-Motion on September 19, 2023. [Dkt. Nos. 247, 249].

The Court held a hearing on the Rule 37 Motion on September 20, 2023 (the "September 20 Hearing"). On November 17, 2023, counsel for Defendants[12] filed a supplemental memorandum of law in support of the Rule 37 Motion and in opposition to the Renewed Cross-Motion [Dkt. No. 273] (the "Supplemental Cross-Motion Opposition" or "Supp. Cross-Mot. Opp.")[13], along with accompanying Victor Declaration ("Victor Decl.") [Dkt. No. 272] and Schulte Declaration ("Schulte Decl.") [Dkt. No. 275]. On December 22, 2023, Debtor filed a supplemental brief in response thereto, along with accompanying materials. [Dkt. Nos. 280-82].

## II.  THE RULE 37 DECISION AND RENEWED CROSS-MOTION DECISION

The Court issued the Rule 37 Decision on April 19, 2024. In the Rule 37 Decision, the Court found that Debtor and CCB failed to comply with their discovery obligations and exercised its discretion to preclude Debtor and CCB from offering documents in evidence at a hearing or trial in support of their respective claims and defenses that were not produced in discovery. Rule 37 Decision at 4-5, 35-36. Additionally, the Court granted Defendants' request for reasonable attorneys' fees and costs for prosecution of the Rule 37 Motion, the

---

[12] Defendants' prior counsel, Blank Rome LLP, moved to withdraw as counsel of record [Dkt. Nos. 261, 262. That motion was granted by Order dated December 1, 2023. [Dkt. No. 278]. Previously, on October 16, 2023, Defendants' new counsel, Houser LLP, filed a notice of appearance. [Dkt. No. 251]. Houser LLP is now counsel of record for Defendants in the adversary proceeding.

[13] In their Supplemental Cross-Motion Opposition, Defendants incorporate their arguments made in the July Cross-Motion Opposition, in light of Debtor's nearly identical arguments in her July Cross-Motion and Renewed Cross-Motion. *See* Supp. Cross-Mot. Opp. at 4.

specific amount of which was to be determined after submission of supplemental documents. *Id.* at 5-6, 36.

In the Rule 37 Decision, the Court also addressed several of Debtor's arguments in the Renewed Cross-Motion, to the extent Debtor endeavored to frame such arguments as somehow dispositive of the Rule 37 Motion. With respect to the Fourth Request for Relief in the Renewed Cross-Motion, the Court rejected Debtor's contention that the Rule 37 Motion should be denied as "moot" on statute-of-limitations grounds, ultimately reserving its ruling on the merits of Debtor's statute-of-limitations argument until after the parties have presented arguments and evidence in connection therewith at trial. *See id.* at 16-21.

On June 14, 2024, the Court ruled on Debtor's remaining requests for relief in the Renewed Cross-Motion [Dkt. No. 318] (the "Renewed Cross-Motion Decision"). The Court denied the First and Third Requests for Relief and reserved its ruling on the Second Request for Relief, which is premised on Debtor's statute-of-limitations argument.[14] *See* Renewed Cross-Motion Decision at 4, 32.

### A. Debtor's Motion for Reconsideration of the Rule 37 Decision

On May 17, 2024, Debtor filed a motion and accompanying materials [Dkt. Nos. 303-06] (the "Motion for Reconsideration"), pursuant to Rules 59(e) and 60(b) of the Federal Rules of Civil Procedure, seeking relief from the Rule 37 Decision. On May 30, 2024, Debtor filed a supplemental memorandum of law purportedly in support of the Motion for Reconsideration.[15] [Dkt. No. 310.] On June 4, 2024, Defendants filed their opposition to the

---

[14] In addition to her arguments in connection with the First, Second, Third, and Fourth Requests for Relief, Debtor also argued in the Renewed Cross-Motion that PHH violated the automatic stay in her bankruptcy case. *See* Cross-Mot. ¶¶ 125-37. The Court issued its decision rejecting Debtor's stay violation argument on July 15, 2024 [Dkt. No. 324].

[15] In the supplemental memorandum of law, Debtor rehashed many of the arguments made in papers previously filed with the Court. Debtor also maintained that Defendants are not entitled to attorneys' fees. [*See* Dkt. No. 310 ¶ 60.]

7

Motion for Reconsideration ("Opp.") [Dkt. No. 313], along with accompanying Victor Declaration [Dkt. Nos 312]. Debtor filed a reply in further support of the Motion for Reconsideration on June 10, 2024. [Dkt. No. 315.]

The Court held a hearing on the Motion for Reconsideration on June 11, 2024 (the "June 11 Hearing") and issued a decision denying the motion on July 1, 2024 [Dkt. No. 323] (the "Motion for Reconsideration Decision").

### B. Debtor's Appeal of the Rule 37 Decision

On May 13, 2024, twenty-four days after the Court issued the Rule 37 Decision, Debtor filed a notice of appeal of the Rule 37 Decision. [*See* Dkt. No. 294; *see also* Dkt. No. 1, Case No. 2:24-cv-03513]. On June 13, 2024, the District Court issued a notice directing Debtor to serve and file her brief within 30 days. [*See* Dkt. No. 3, Case No. 2:24-cv-03513.] The record reflects that Debtor failed to file her appeal brief by the District Court's deadline—and, indeed, has not filed an appeal brief to date.[16]

### III. SUPPLEMENTAL BRIEFING ON ATTORNEYS' FEES AND COSTS FOLLOWING THE RULE 37 DECISION

The Court entered an order extending the deadlines for supplemental briefing in connection with the amount of attorneys' fees and costs to be awarded pursuant to the Rule 37 Decision on May 3, 2024. [Dkt. No. 292.] Defendants filed their memorandum of law in connection therewith, along with accompanying materials, on May 17, 2024. [Dkt. Nos. 307-

---

[16] This Court retains jurisdiction to fix the amount of monetary sanctions to be awarded pursuant to the Rule 37 Decision. *See Gortat v. Capala Bros., Inc.*, No. 07 CV 3629 (ILG), 2009 WL 10706565, at *1 (E.D.N.Y. June 23, 2009) (concluding that, where court was faced with determining the amount of monetary sanctions to be imposed against defendants' counsel after counsel filed a notice of appeal of the order awarding sanctions, the district court was not divested of jurisdiction to fix the amount because the order awarding sanctions was not final and, therefore, not appealable).

09.] Defendants request attorneys' fees and costs in the amount of $46,643.80. [*See* Dkt. No. 307 at 2, 7.] Debtor did not file a substantive response.[17]

## LEGAL STANDARD

Rule 37(b) of the Federal Rules of Civil Procedure allows a court to impose sanctions against a party who "fails to obey an order to provide or permit discovery under Rule 26(f), 35, or 37(a)." *See Pergament v. Thilman (In re Thilman)*, 548 B.R. 1, 7 (Bankr. E.D.N.Y. 2016) (citing Fed. R. Civ. P. 37(b)(2)(A)). As relevant here, Rule 37(b)(2)(C) further provides that, "instead of or in addition to imposing sanctions for a party's failure to comply with a court order, 'the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.'" *See Patino v. Avalon Bay Communities, Inc.*, No. CV 142376 (LDW)(AYS), 2016 WL 8677284, at *3 (E.D.N.Y. Jan. 8, 2016) (quoting Fed. R. Civ. P. 37(b)(2)(C)). While the Second Circuit has not explicitly held that the payment of expenses pursuant to Rule 37(b)(2)(C) is mandatory[18], the burden is on the violator of a discovery order to show that there was a substantial justification for the violation, or that circumstances would make an award of

---

[17] On May 30, 2024, Debtor filed a supplemental memorandum of law purportedly in support of the Motion for Reconsideration. [Dkt. No. 310.] In the supplemental memorandum of law, Debtor maintained that Defendants are not entitled to attorneys' fees for many of the reasons stated in papers previously filed with the Court, but did not contest the hourly rate/fee amount. [*See* Dkt. No. 310 ¶ 60.]

[18] Several courts in this circuit have held that cost-shifting under Rule 37(b)(2)(C) is mandatory. *See, e.g.*, *E.L.A. v. Abbott House, Inc.*, No. 16-CV-1688 (RMB) (JLC), 2020 WL 5682019, at *5 (S.D.N.Y. Sept. 24, 2020) (observing that "the Court *must* grant these sanctions unless Plaintiff's counsel establishes that his 'failure was substantially justified or other circumstances make an award of expenses unjust') (citing *Silva v. Cofresi*, No. 13-CV-3200 (CM) (JCF), 2014 WL 3809095, at *5 (S.D.N.Y. Aug. 1, 2014)); *Kizer v. Abercrombie & Fitch Co.*, No. CV125387JSAKT, 2017 WL 9512408, at *6 (E.D.N.Y. July 24, 2017), *report and recommendation adopted*, No. 12-CV-5387(JS)(AKT), 2017 WL 3411952 (E.D.N.Y. Aug. 9, 2017) ("Rule 37(b)(2)(C) requires that 'instead of or in addition to' other sanctions imposed, the disobedient party or his designated counsel 'must' pay 'reasonable expenses' to include attorney's fees caused by the failure."); *Joza v. WW JFK LLC*, No. 07-CV-4153(ENV)(JO), 2009 WL 10706518, at *3 (E.D.N.Y. June 25, 2009) ("Indeed, where a party fails to follow a discovery order, Rule 37(b)(2)(C) mandates that a court impose reasonable costs on the disobedient party.").

reasonable expenses unjust. *Id.* In the Rule 37 Decision, the Court awarded attorneys' fees and costs pursuant to Rule 37(b)(2)(C), with the amount to be determined after the parties' submission of supplemental briefing.

Importantly, the Second Circuit has recognized that all litigants, including *pro se* litigants, have an obligation to comply with court orders, and the failure to do so may result in sanctions. *See Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302 (2d Cir. 2009); *see also Thilman*, 548 B.R. at 8 ("[W]hile *pro se* litigants may in general deserve more lenient treatment than those represented by counsel, all litigants, including *pro ses*, have an obligation to comply with court orders. When they flout that obligation, they, like all litigants, must suffer the consequences of their actions.") (quoting *McDonald v. Head Crim. Ct. Supervisor Officer*, 850 F.2d 121, 124 (2d Cir. 1988)); *McDonald v. Head Crim. Ct. Supervisor Officer*, 117 F.R.D. 55, 58 (S.D.N.Y. 1987), *aff'd*, 850 F.2d 121 (2d Cir. 1988) (observing that "special solicitude for the difficulties that a *pro se* plaintiff must face does not extend to the wil[l]ful, obstinate refusal to play by the basic rules of the system upon whose very power the plaintiff is calling to vindicate his rights").

A party's "pro se status does not shield [the party] from the sanction of attorney's fees." *See Deloache-Holford v. Liberty Mut. Ins.*, No. 08 CV 1792 (SJF)(LB), 2010 WL 2787626, at *3 (E.D.N.Y. May 25, 2010), *report and recommendation adopted as modified*, No. 08-CV-1792(SJF)(WDW), 2010 WL 2787622 (E.D.N.Y. July 9, 2010) (citing *Lee v. Trans Union LLC,* No. 06 Civ. 4003 (PAC)(KNF), 2007 WL 1098697, at *3 (S.D.N.Y. April 9, 2007)); *see also Lee*, 2007 WL 1098697, at *3 (awarding attorneys' fees and costs against *pro se* plaintiff); *LeGrande v. Adecco*, 233 F.R.D. 253, 257-58 (N.D.N.Y. 2005) (awarding sanctions against *pro se* plaintiff to reimburse defendant for the "unfair imposition of deposition costs" and observing that "[t]here is no exception to honoring and respecting discovery orders" and "[a]ll

litigants and litigators, including *pro ses,* must comply and when they flout their obligation, they must suffer the consequences of such action") (citing *Baker v. Ace Advertisers' Serv. Inc.,* 153 F.R.D. 38, 40 (S.D.N.Y. 1992)). "Nor, generally, is poverty a bar to the imposition of sanctions for willful misconduct." *See Deloache-Holford*, 2010 WL 2787626, at *3 (citing *Interscope Recs. v. Barbosa*, No. 05 CV 5864 (DGT)(RML), 2007 WL 14332, at *2 (E.D.N.Y. Jan. 3, 2007)); *see also Baker v. Ace Advertisers' Serv., Inc.*, 134 F.R.D. 65, 74 (S.D.N.Y. 1991), *report and recommendation adopted*, 153 F.R.D. 38 (S.D.N.Y. 1992) (observing that "defendants should not be asked to shoulder the economic burden of plaintiff's willful misconduct" and requiring *pro se* plaintiff to pay the expenses, including attorney's fees, incurred as a result of defendants' Rule 37 motion).

### I.     "PRESUMPTIVELY REASONABLE FEE" USING LODESTAR METHOD

Both the Second Circuit and the Supreme Court have held that the lodestar method—the product of a reasonable hourly rate and the reasonable number of hours required by the case—creates a "presumptively reasonable fee." *See generally Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (citing *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2007); *Perdue v. Kenny A. ex rel. Winn,* 130 S.Ct. 1662, 1673 (2010)); *Kizer*, 2017 WL 9512408, at *2 (quoting *Millea*, 658 F.3d at 166); *see also In re Terrorist Attacks on Sept. 11, 2001*, No. 03 MDL 1570 (GBD) (FM), 2015 WL 6666703, at *4 (S.D.N.Y. Oct. 28, 2015), *report and recommendation adopted sub nom. In re: Terrorist Attacks*, No. 03MDL1570GBDFM, 2015 WL 9255560 (S.D.N.Y. Dec. 18, 2015) ("To determine the reasonable attorneys' fees to which a party is entitled, a court must calculate the 'presumptively reasonable fee,' often referred to as the 'lodestar' . . . . The presumptively reasonable fee is arrived at by multiplying the number of hours reasonably expended by a reasonable hourly rate.").

Courts in the Second Circuit use the "lodestar method" in assessing an application for attorneys' fees under Rule 37.[19] *See, e.g.*, *Eisner v. Enhanced Recovery Co., LLC*, No. 17-CV-1240(LDH)(ST), 2021 WL 3230685, at *4 (E.D.N.Y. June 30, 2021), *report and recommendation adopted as modified*, No. 17-CV-1240 (LDH)(ST), 2021 WL 3207039 (E.D.N.Y. July 29, 2021); *see also, e.g.*, *Laboy v. Quality Auto. Servs., Inc.*, No. 21 CV 2501 (NRM)(RML), 2024 WL 472983, at *2 (E.D.N.Y. Feb. 7, 2024) (noting that "[c]ourts in this Circuit exercise their discretion to determine the reasonableness of attorney's fees using the 'presumptively reasonable fee' standard" and applying standard in awarding fees pursuant to Rule 37(b)(2)(C)); *Martinenko v. 212 Steakhouse, Inc.*, No. 22-CV-518 (JLR)(RWL), 2023 WL 2919559, at *13 (S.D.N.Y. Apr. 12, 2023) (applying lodestar calculation when awarding fees pursuant to Rule 37(b)(2)(C)); *Karsch v. Blink Health Ltd.*, No. 17-CV-3880 (VM)(BCM), 2019 WL 6998563, at *2 (S.D.N.Y. Dec. 20, 2019) (same); *Antonmarchi v. Consol. Edison Co. of New York*, No. 03 CIV. 7735 (LTS) (KNF), 2012 WL 3126004, at *1 (S.D.N.Y. July 31, 2012) (same).

### A. Reasonable Hourly Rate

As to the hourly rates, "[a] fee applicant bears the burden of 'produc[ing] satisfactory evidence' that its requested rates are 'in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.'" *See Karsch*, 2019 WL 6998563, at *2 (quoting *In re Terrorist Attacks on Sept. 11, 2001*, 2015 WL 6666703, at *4 (S.D.N.Y. Oct. 28, 2015)); *Antonmarchi*, 2012 WL 3126004, at *2 (noting that

---

[19] Additionally, some courts in the Second Circuit have extended the "contemporaneous record" requirement to fee awards under Rule 37. *See Montesa v. Schwartz*, No. 12 CIV 6057 (CS) (JCM), 2015 WL 13173166, at *3 (S.D.N.Y. Oct. 13, 2015) (collecting authority evidencing the "difference of opinion among . . . sister courts as to whether contemporaneous billing records are required in connection with Rule 37 fee awards"); *see also generally New York State Ass'n for Retarded Child., Inc. v. Carey*, 711 F.2d 1136, 1147 (2d Cir. 1983) (addressing request for fees pursuant to 42 U.S.C. § 1988 and holding that "contemporaneous time records are a prerequisite for attorney's fees in this Circuit").

"a reasonable hourly rate is the minimum rate a paying client would be willing to pay to litigate the case effectively") (citing *Arbor Hill Concerned Citizens Neighborhood Ass'n*, 522 F.3d at 190).

Courts have recognized that counsel "must demonstrate that the requested rate . . . is consistent with 'the hourly rates employed in the district in which the reviewing court sits.'" *See, e.g.*, *Eisner*, 2021 WL 3230685, at *4 (quoting *Yu Chen v. LW Rest., Inc.*, No. 10 CV 200 (ARR), 2011 WL 3420433, at *23 (E.D.N.Y. Aug. 3, 2011)). Additionally, courts may consider their own experience and familiarity with the case and with rates generally charged. *See id.* (citing *Cruz. v. Local Union No. 3 of the Intl' Bhd. Of Elec. Workers*, 34 F.3d 1148, 1160 (2d Cir. 1994)).

In recent years, courts in the Eastern District of New York have awarded hourly rates ranging from $300 to $450 for partners, $200 to $325 for senior associates, and $100 to $200 for junior associates. *See, e.g.*, *Laboy*, 2024 WL 472983, at *2; *Eisner*, 2021 WL 3230685, at *4 (citing *Sooroojballie v. Port Auth. of New York & New Jersey*, No. 1:15-cv-01230 (WFK) (PK), 2020 WL 9934418, at *3 (E.D.N.Y. Nov. 10, 2020)); *see also In re Polanco*, 626 B.R. 12, 32 (Bankr. E.D.N.Y. 2021) (concluding that hourly rate of $500 for "senior and experienced bankruptcy and litigation attorney" was "reasonable in light of what would be customary in both bankruptcy and non-bankruptcy matters"). Courts have also determined that, as to paralegals, a range of $70 to $100 per hour is a reasonable fee. *See Eisner*, 2021 WL 3230685, at *4 (citing *Sooroojballie*, 2020 WL 9934418, at *3); *see also In re Polanco*, 626 B.R. at 32 (concluding that hourly rate of $200 for paralegals' time was reasonable "in light of what would be customary in both bankruptcy and non-bankruptcy matters").

### B. Reasonable Number of Hours

To determine the reasonableness of the hours spent on the litigation, the court must make "a conscientious and detailed inquiry into the validity of the representations that a

certain number of hours were usefully and reasonably expended." *See Laboy*, 2024 WL 472983, at \*3 (quoting *Maldonado v. La Nueva Rampa, Inc.*, No. 10 CV 8195 (LLS) (JLC), 2012 WL 1669341, at \*13 (S.D.N.Y. May 14, 2012)). The "critical inquiry is 'whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures.'" *Id.* (citing *Maldonado*, 2012 WL 1669341, at \*13).

Hours that are "excessive, redundant, or otherwise unnecessary" may be excluded from an attorneys' fee award. *See Karsch*, 2019 WL 6998563, at \*4 (quoting *Infinity Headwear & Apparel v. Jay Franco & Sons*, No. 15-CV-1259 (JPO) (RLE), 2016 WL 6962541, at \*5 (S.D.N.Y. Nov. 28, 2016)). Courts may account for over-billing by applying an across-the-board percentage reduction. *See Kizer*, 2017 WL 9512408, at \*10, \*13 (concluding that a 25% across-the-board reduction in the total hours claimed was warranted) (internal citations omitted); *see also Alcon Vision, LLC v. Lens.com, Inc.*, No. 18-CV-407 (NG) (SJB), 2023 WL 8072507, at \*4 (E.D.N.Y. Nov. 21, 2023) (collecting cases and observing that "[t]he Second Circuit has upheld across-the-board percentage cuts of 50% for vague billing entries . . . and 30% for fee applications that included block billing issues").

## II.   COSTS

Courts typically award "those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee-paying clients." *See Kizer*, 2017 WL 9512408, at \*4 (citing *Reichman v. Bonsignore, Brignati & Mazzotta, P.C.*, 818 F.2d 278, 283 (2d Cir. 1987); *Sheet Metal Workers Nat'l Pension Fund v. Evans*, No. 12 Civ. 3049, 2014 WL 2600095, at \*11 (E.D.N.Y. Jun. 11, 2014)); *see also Carrington v. Graden*, No. 18 CIV. 4609 (KPF), 2020 WL 5758916, at \*16 (S.D.N.Y. Sept. 28, 2020) ("[A]ttorney's fees awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients.") (internal citations omitted). "[I]t is incumbent upon the party seeking

14

reimbursement of its costs to provide the court adequate substantiation in the form of receipts and other documents not only showing such costs were incurred, but that they were paid." *See Kizer*, 2017 WL 9512408, at *4 (citing *Lee v. Santiago*, No. 12 CIV. 2558, 2013 WL 4830951, at *5 (S.D.N.Y. Sept. 10, 2013)).

## DISCUSSION

Defendants request attorneys' fees and costs in the amount of $46,643.80. [*See* Dkt. No. 307 at 2, 7.] As noted *supra* Background Section III, Debtor did not file a substantive response to Defendants' supplemental briefing. Indeed, in Debtor's response, she did not dispute the requested award—she merely alleged that no fees should be awarded for the same reasons argued in her prior filings and rejected by this Court.

For the reasons set forth below, the Court awards attorneys' fees in the amount of $5,000 and declines to award costs.

### I. ATTORNEYS' FEES

#### A. Hourly Rate

Defendants represent that, for relevant periods, the hourly fees for the attorneys and support staff at Blank Rome LLP were as follows: Diana Eng, of counsel at Blank Rome LLP who was admitted to practice law in New York in 2004, billed at $396 per hour through the end of January 2022, and $410 per hour from February 15, 2022 through September 29, 2023; Andrea Roberts, an associate at Blank Rome LLP who was admitted to practice law in New York in 2009, billed at $310 per hour from January 20, 2022 to January 31, 2022, and $340 per hour from February 1, 2022 through September 20, 2023; Timothy Salter, an associate at Blank Rome LLP who was admitted to practice law in New York in 2011, billed at $310 per hour; and Douglas McDermott, a paralegal at Blank Rome LLP, billed at $180 per hour. [Dkt. No. 307 at 4-6; *see also* Dkt. No. 309, Ex. C.]

Defendants represent that, for relevant periods, the hourly fees for the attorneys at Houser LLP were as follows: Kathleen Massimo, partner at Houser LLP who was admitted to practice law in New York in 2010, billed at $425 per hour from April 22, 2024 through April 30, 2024; and Zachary Victor, associate at Houser LLP who was admitted to practice law in New York in 2018, billed at $300 per hour from October 11, 2023 through December 14, 2023, and $330 per hour from February 5, 2024 through May 3, 2024. [Dkt. No. 307 at 6-7; *see also* Dkt. No. 309, Ex. D.]

The Court concludes that the rates are within the range of amounts that have been awarded in this district and are therefore reasonable. *See, e.g.*, *Laboy*, 2024 WL 472983, at \*2; *Eisner*, 2021 WL 3230685, at \*4 (citing *Sooroojballie v. Port Auth. of New York & New Jersey*, No. 1:15-cv-01230 (WFK) (PK), 2020 WL 9934418, at \*3 (E.D.N.Y. Nov. 10, 2020)).

### B. Hours Spent

With respect to legal services performed by Blank Rome LLP, Defendants represent as follows: Eng worked 0.9 hours at $396 per hour, and 20.4 hours at $410 per hour; Roberts worked 2.9 hours at $310 per hour, and 77.9 hours at $340 per hour; and Salter and McDermott each worked 2.6 hours at their respective hourly rates. Additionally, with respect to legal services performed by Houser LLP, Defendants represent as follows: Massimo worked 1.1 hours at $425 per hour, and Victor worked 4 hours at $300 per hour and 27.5 hours at $330 per hour.

The Court observes that Defendants' total number of hours includes billing entries for hours worked as early as January 7, 2022. [*See* Dkt. No. 309, Ex. C.] Pursuant to Rule 37(b)(2)(C), a court must order the disobedient party "to pay the reasonable expenses, including attorney's fees, *caused by the failure*" of such party to comply with a court order. *See In re Feldman*, 597 B.R. 448, 463 (Bankr. E.D.N.Y. 2019), *aff'd sub nom. Glassman v. Feldman*, No. 19-CV-5002 (MKB), 2020 WL 6119270 (E.D.N.Y. Oct. 16, 2020) (citing Fed. R.

Civ. P. 37(b)(2)(C)) (emphasis in original); *see also Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*, No. 16-CV-1318 (GBD) (BCM), 2020 WL 2512045, at *3 (S.D.N.Y. May 15, 2020) (observing that courts "should not award fees for hours that were not 'caused by' the opposing party's violations of court orders"); *Karsch*, 2019 WL 6998563, at *5 (noting that "Rule 37(b)(2)(C) provides that this Court must issue an award of reasonable expenses 'caused by' a party's violation of Court orders"). Courts have interpreted expenses "caused by the failure" to include fees incurred *after* a court-ordered discovery deadline has passed and a litigant has failed to comply with the deadline. *See, e.g.*, *In re Feldman*, 597 B.R. at 464 ("The Debtor's refusal to comply with his disclosure obligations did not cause all of Glassman's legal expenses and fees in this case. By So-Ordered Stipulation, dated August 11, 2017, the Debtor's deadline to produce documents as required by the 2004 Order was September 15, 2017. . . . As such, September 16, 2017 is the earliest date at which the Debtor could have failed to comply with the 2004 Order. . . . Yet, Glassman seeks fees dating back to May 10, 2017. . . . Any expenses or fees incurred prior to October 10, 2017 were not caused by the Debtor's failure to comply with his discovery obligations and, therefore, are not compensable."); *In re Bello*, 528 B.R. 562, 569 (Bankr. E.D.N.Y. 2015) (declining to award fees in connection with work that was done prior to litigant's failure to comply with court order because "it was not caused by the failure" and reducing fee award accordingly).

The Court entered the discovery order on April 17, 2023. *See* Rule 37 Decision at 9. The discovery order directed Debtor and CCB to serve compliant responses to the discovery requests by May 12, 2023. *See id.* at 9-10. Debtor and CCB failed to comply by the court-ordered deadline. *See id.* at 10. Therefore, the Court notes that, consistent with *Feldman* and *Bello*, all fees incurred for hours spent on work that was done before May 12, 2023, should be excluded from the total fee award.

17

### C. Other Considerations

Courts have exercised their discretion to adjust awards of attorneys' fees under a variety of other circumstances. *See, e.g.*, *Deloache-Holford*, 2010 WL 2787626, at *3 (observing that "[a]lthough the Court believes a sanction is appropriate in this case, the Court does not believe defendant's counsel's fees from plaintiff's deposition through the adjudication of this motion, in the amount of $33,059.00, is the proper measure" and reducing award of attorneys' fees against *pro se* plaintiff to amount for time spent preparing for and attending conference); *Interscope Recs.*, 2007 WL 14332, at *3 (concluding that monetary sanctions were warranted where "plaintiffs [were] entitled to some compensation for being forced to pursue discovery that would have been unnecessary had defendant not intentionally concealed discoverable information" and reducing award—although the amount was reasonable as requested—to account for defendant's *pro se* status); *see also Cuffee v. Gonzalez*, No. 15-CV-08916 (PGG) (DF), 2021 WL 4991800, at *6 (S.D.N.Y. Oct. 27, 2021) (recommending that, if *pro se* plaintiff fails to produce copies of requested emails or, in the alternative, a statement confirming that such emails do not exist, *pro se* plaintiff be directed to pay defendants' counsel a portion of the legal fees reasonably incurred by defendants).

While the requested fees—as reduced to exclude fees incurred before May 12, 2023—are reasonable, the Court exercises its discretion to further reduce the award in light of Debtor's status as a *pro se* litigant.[20] The Court therefore reduces the total award to $5,000, with Debtor and CCB each to pay $2,500.

### II. COSTS

In their memorandum of law and the billing records appended to the Declaration of Kevin Flannigan, Defendants identified $87.56 in costs for tolls and mileage for Roberts of

---

[20] The Court need not engage in a line-by-line analysis of the billing records. *See Kizer*, 2017 WL 9512408, at *10 (collecting authority).

18

Blank Rome LLP to appear at discovery hearings. [*See* Dkt. No. 307 at 4; *see also* Dkt. No. 309, Ex. C.]

As discussed *supra*, parties must provide "adequate substantiation in the form of receipts and other documents not only showing such costs were incurred, but that they were paid." *See Kizer*, 2017 WL 9512408, at *4 (citing *Lee*, 2013 WL 4830951, at *5); *see also Lee*, 2013 WL 4830951, at *5 ("As for costs, it is again the requesting party's burden to support its application, and this means that the requested costs must be substantiated. . . Court fees that are reflected on the Court's docket are sufficiently substantiated . . . as are costs for which a plaintiffs provides extrinsic proof, such as invoices or receipts. A sworn statement or declaration under penalty of perjury that certain amounts were expended on particular costs may also be sufficient. . . . *A mere assertion that a certain cost was incurred, though, is insufficient, where such an assertion is made in a conclusory fashion in a brief or bill of costs, without a supporting affidavit, declaration, or documentation.*") (emphasis added). Beyond reference as several lines in billing entries, Defendants have failed to provide any substantiation that Roberts' travel and mileage costs were paid. The Court therefore declines to award the requested costs.

## CONCLUSION

For the reasons set forth above, the Court awards attorneys' fees in the amount of $5,000 and declines to award costs. The Court directs Debtor and CCB each to pay $2,500 of the total attorneys' fee award. Debtor and CCB shall remit payment of their respective portions of the award within thirty days of entry of this decision.

Dated: August 16, 2024
Central Islip, New York

**Louis A. Scarcella**
United States Bankruptcy Judge